**In re MILLER & HARBAUGH.**[*]

**HARBAUGH v. CLARK.**

No. 6433.

Circuit Court of Appeals, Ninth Circuit.

Oct. 26, 1931.

Barnett H. Goldstein, H. E. Collier, and S. J. Bischoff, all of Portland, Or., for appellant.

Coan & Rosenberg, of Portland, Or., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and WEBSTER, District Judge.

WILBUR, Circuit Judge.

This is an appeal from an order adjudging appellant guilty of contempt on refusing to obey a turnover order. Appellant testified consistently throughout the turnover proceedings, and in the contempt proceedings, that he did not have in his possession any property to turn over. Many questions are raised in the briefs concerning the power of the court to hear or consider evidence of the respondent in proceedings instituted to obtain a turnover order, to the effect that he did not have and never did have the property which he was directed to turn over. Whether or not such evidence can be considered, and the weight to be attached to it, are matters frequently considered by the courts, but which have been set at rest in a recent decision of the Supreme Court of the United States written by Chief Justice Taft. Oriel et al. v. Russell, Trustee (Prela v. Hubshman, Trustee), 278 U. S. 358, 49 S. Ct. 173, 73 L. Ed. 419. Here an order was made, on August 19, 1930, directing appellant to turn over to the trustee within five days from the date of said order: " * * * Merchandise con-

*For opinion denying rehearing, see 54 F.(2d) 612.

sisting of jewelry used by the bankrupt in connection with its said business as a retail jeweler on the premises located at the Buyers Building, 3rd and Alder Streets, Portland, Oregon, of the cost value to the bankrupt in the sum of $6,933.32 belonging to the bankrupt's estate in bankruptcy."

Thereafter a petition for review was filed by appellant and a hearing was had thereon in the District Court, and on October 29, 1930, an order of said court was made and entered affirming and adopting in every particular and in all respects said findings of fact and order of the referee, it being in said order of the District Court further ordered that appellant, within ten days from the date of the court's order, turn over and deliver to the trustee said merchandise, which was described in the language above quoted, the order thereupon stating that " * * * said merchandise was found to be in the bankrupt's possession on September 9th, 1929, and is now in the possession of Paul C. Harbaugh, managing director of the bankrupt, or under his control and is by said Paul C. Harbaugh being wrongfully, unlawfully, knowingly and intentionally withheld and concealed by him from George P. Clark, Trustee herein."

On November 26, 1930, twenty-seven days after said order was entered, and seventeen days after default by appellant, the trustee filed a motion, supported by his affidavit, to punish appellant for contempt for failure to obey said order of the District Court. Thereupon, on November 26, 1930, the District Court made and entered a rule to show cause, returnable December 8, 1930, why appellant should not be adjudged guilty of contempt of court and punished therefor for failure to comply with said order of October 29, 1930. In said rule, the merchandise is described substantially in the words last above quoted herein. Thereafter the District Court made an order adjudging appellant to be in contempt in failing and refusing to turn over to the trustee the merchandise in question, describing it in the language of the turnover orders and of the rule to show cause. Said order further directed the commitment and imprisonment of appellant until he should obey the court's turnover order.

Appellant contends that the turnover orders and the order to punish for contempt are invalid because they do not describe the property to be turned over with reasonable certainty. We are persuaded that this contention is well taken, and that the descrip-

tion of the property in question, as contained in said orders, is too uncertain to constitute the basis of contempt proceedings. Said description does not describe, nor does it attempt to describe, the property which the bankrupt is directed to turn over to the trustee.

The orders in question are entirely too indefinite to justify the imprisonment of the bankrupt for failing to obey them. A somewhat similar but more definite order was held to be void by the Circuit Court of Appeals for the Fifth Circuit in Samel v. Dodd, 142 F. 68, 70. There the order directed the bankrupt to pay over to the trustee $2,417.83. It is there said: "The trial court found, as matters of fact, that a large amount of goods, not specifically described, was withdrawn by the bankrupts from their stock; that such goods were held by them in some way in fraud of their creditors; and that it was within the power of the bankrupts to produce the same and turn them over to the trustee. The bankrupts, by the terms of the order, were adjudged guilty of contempt 'in failing and refusing to turn over to the trustee assets belonging to the bankrupts' estate, in violation of law.' And it was further ordered and adjudged, following the language of the order, 'that said named parties pay over to Harry Dodd, the trustee in bankruptcy, the sum of $2,417.83,' and upon failure to make such payment they were ordered committed to jail. It is thus observed that the court found goods, wares, and merchandise to be in possession of the bankrupts, and, in effect, rendered judgment for their value, and ordered the commitment of the bankrupts until the amount should be paid. We are of the opinion that the order cannot be sustained. If the bankrupts had in their possession merchandise, which should have been delivered to the trustee, the appropriate order would have been for the delivery of merchandise. If they had money, which formed part of their estate, they should have been required to pay over money." Certiorari denied 201 U. S. 646, 26 S. Ct. 761, 50 L. Ed. 903.

While the invalidity of the turnover order is sufficient to dispose of the appeal and requires a reversal of the order adjudging the appellant in contempt, it should perhaps be further stated that it is apparent from the record that the attempted designation in the turnover order of the merchandise sought to be recovered was arrived at in much the same manner as that set forth by Judge Dickinson of the District Court of

the Eastern District of Pennsylvania, In re Tabak, 34 F.(2d) 209; that is, by the taking of an inventory showing the value of the stock of merchandise turned over by the bankrupt to the trustee and by subtracting the total cost value to the bankrupt of said inventoried stock from the total cost value thereof as disclosed by an examination of the bankrupt's books and records and admissions by appellant as having been purchased during the six months' period in which the bankrupt had engaged in business, and also by subtracting from the total cost value last mentioned the total value, at cost to the bankrupt, of the stock sold and of materials used for repairs, it was determined that merchandise of the total value indicated by the balance was or should have been in the possession of the bankrupt. In the case at bar, the difficulty in arriving at clear and definite decision in the matter, however, arose from the fact that the books of the company did not show what particular articles of property purchased by the bankrupt had been sold. Consequently it could not be determined from the books of the bankrupt what particular items of personal property he had on hand or should have had on hand at the time of bankruptcy. In default of such evidence, the referee adapted his order to the situation by requiring the delivery by the bankrupt to the trustee of goods having an aggregate invoiced value of $6,933.32. By this method, the referee avoided the necessity of determining the specific articles of personal property it was the duty of the bankrupt to turn over.

The turnover order is void, and the order adjudging the bankrupt in contempt is reversed.

## AMERICAN SURETY CO. OF NEW YORK v. INDEPENDENT SCHOOL DIST. NO. 18 OF LAKE PARK, MINN.

No. 8993.

Circuit Court of Appeals, Eighth Circuit.

Sept. 29, 1931.

BOOTH, Circuit Judge, dissenting.

Charles S. Kidder, of St. Paul, Minn. (Orr, Stark, Kidder & Freeman, of St. Paul, Minn., on the brief), for appellant.

H. N. Jenson, of Detroit Lakes, Minn., for appellee.

Before KENYON and BOOTH, Circuit Judges, and OTIS, District Judge.

OTIS, District Judge.

One William J. Norby was elected treasurer of the Independent School District No. 18 of Lake Park, Minn., appellee herein, for a term of one year from August 1, 1924, and until his successor was duly elected and qualified. He was required to and did give a bond, with the appellant, the American Surety Company, as surety, one of the conditions of which was that he should pay over to the officer entitled thereto all moneys coming into his hands as treasurer. On August 24, 1925, he had on deposit, in his official capacity, in the First National Bank of Lakeview the sum of $15,902.54. On August 24, 1925, that bank was closed and was taken over by the Comptroller of the Currency and was placed in the hands of a receiver. Norby was elected to succeed himself for a term beginning August 1, 1925, but did not qualify until November 12, 1925. His second term expired August 1, 1926. He continued in office, however, until in November, 1926, when he was succeeded by one Hanson. He had given a second bond, with the appellant as surety, when he qualified on November 12, 1925, to succeed himself. Failing, on the succession of Hanson, to turn over to Hanson any funds belonging to the school district, the district brought suit on the second bond and had judgment thereon for the full amount of its penalty. The present suit thereafter was brought on the first bond to recover the amount lost through the failure of the First National Bank, an amount claimed to be, after the deduction of dividends paid by the receiver, $8,746.41. Appellee had judgment in the District Court for that amount.

The questions raised by the appeal include the following: (1) Did the mere failure of the bank on August 24, 1925, involve a breach as of that date of Norby's obligation as protected by the bond? (2) Did Norby breach the obligation protected by the bond when, succeeding himself on November 12, 1925, he failed to turn over to himself a sum equivalent to that which had been lost by the closing of the bank? And (3) was the bond here sued on still in force on November 12, 1925, when Norby qualified to succeed himself as treasurer?

■ 1. It is suggested but not seriously contended by appellee that Norby breached his obligation to the school district at the time and by reason of the mere failure of the bank in which school funds were deposited. We think this an untenable view. No official depository of the district had been designated. It was certainly consistent with Norby's duty to deposit funds in his charge in some reputable bank, although he did not thereby, as is conceded by appellant, relieve himself of responsibility for them. But his duty to faithfully discharge the duties of his office was not violated by the failure of the bank. That failure was the result of none of his acts nor was it in any sense his fault. He breached no duty until and unless, on proper demand of the district, he failed to pay over funds intrusted to him or until and unless, at the expiration of his term, he failed to turn over to his successors such funds. Failure to pay over funds when required made him and his surety liable, and neither could successfully defend on the ground that a bank in which the funds were deposited had failed. The breach of duty, however, was as of the time of the failure to pay over. Northern Pacific R. R. Co. v. Owens, 86 Minn. 188, 90 N. W. 371, 57 L. R. A. 634, 91 Am. St. Rep. 336; Board of Education v. Jewell et al., 44 Minn. 427, 46 N. W. 914, 20 Am. St. Rep. 586. See, also, United States v. Prescott et al., 3 How. (44 U. S.) 578, 588, 11 L. Ed. 734; Gartley et al. v. People, 28 Colo. 227, 64 P. 208; Rose et al. v. Douglass Township, 52 Kan. 451, 34 P. 1046, 39 Am. St. Rep. 354; Tillinghast v. Merrill, 151 N. Y. 135, 45 N. E. 375, 34 L. R. A. 678, 56 Am. St. Rep. 612; Bush et al. v. Johnson County, 48 Neb. 1, 66 N. W. 1023, 32 L. R. A. 223, 58 Am. St. Rep. 673; State ex rel. v. Moore, 74 Mo. 413, 41 Am. Rep. 322.

■ 2. There was then no breach of Norby's obligation as protected by his bond (if the bond was then in force), on August 24, 1925, when the bank was closed. There is nothing in the record to show any unsatisfied demand on him for funds prior to November 12, 1925, when he qualified as his own successor. The fact that he was his own successor did not affect the nature of his duty which was to turn over to his successor the school funds he had received and had not lawfully paid out. The trial court found as a fact that he did not turn over the funds which originally had been deposited by him in the First National Bank. That finding the evidence supports. At the time he succeeded himself he breached the obligation which his bond pro-

tected, if the bond was then in force. Appellee contends it was not then in force on the theory it had expired before November 12, 1925.

3. The bond was executed November 3, 1924. It contained this language:

"The condition of the above Obligation is such, That whereas the above bounden William J. Norby was heretofore duly elected to the office of Treasurer for the Independent School District #18, Minn. for the term of one year from and after the 1st day of August, 1924, and until his successor is·elected and has qualified;

"Now, Therefore, if the said William J. Norby shall faithfully and impartially, in all things, during his continuance in office, perform the duties thereof without fraud, deceit or oppression, and pay over without delay to the officer entitled by law thereto all moneys which shall come into his hands by virtue thereof, then this obligation shall be void, otherwise to remain in full force and effect."

By the express terms of the bond appellant was liable for any shortage (covered by the bond), arising during Norby's term expiring August 1, 1925, "and until his successor is elected and qualified." His successor was not qualified until November 12, 1925. By the express terms of the bond, read literally, that date, which was the date of Norby's failure to pay over, was within the term covered by the bond.. The appellant contends, however, that such a bond containing such language continues in force only "until a reasonable time after the expiration of the statutory term" and that such a reasonable time is only a time "sufficient to give the public body a reasonable opportunity to choose a successor and have him qualified." It is contended that from August ·1, 1925, to November 12, 1925, was an unreasonable time. County of Scott v. Ring, 29 Minn. 398, 13 N. W. 181, 185, is cited by appellant to be decisive.

The facts in County of Scott v. Ring were these: One Ring had been elected county treasurer for a term expiring March 1, 1880. A statute (Gen. St. Minn. 1878, c. 8, § 144) provided that the term of a county treasurer should "continue for two years, and until a successor is elected and qualified." Other pertinent statutes (Gen. St. Minn. 1878, c. 8, § 146; c. 9, § 2) however, provided that if the duly elected successor to the office of county treasurer did not qualify by January 15th following election the "office

shall become vacant" and that in that event the board of county commissioners should appoint a county treasurer. Ring was elected to succeed himself but did not, by January 15, 1880, give the required bond for his second term. Nevertheless he continued in office until June 21, 1880. Between March 1, 1880, and June 21 he was guilty of certain defalcations. The surety on his bond was required by the judgment of the trial court to' make·good the loss sustained by the county, but the Supreme Court of Minnesota reversed. the judgment. The ground of reversal was this: That the various statutes fixing the county treasurer's term, declaring a vacancy in that office for failure to qualify, providing for the filing of such a vacancy, all entered .into and were a part of the contract (the bond), signed by the surety; that it was not the intention of the parties, in view of the statutes thus incorporated in the contract, that Ring should remain in office, having failed to qualify for his second term, after March 1, 1880, nor that the surety should be liable for Ring's delinquencies after that date.

But the ground stated was not alone sufficient for the reversal and the court added: "We do not say that that obligation [that is, the obligation of the bond] would not.extend in any event beyond the first day of March. It has been decided, under statutes similar to our own, and under laws of incorporation declaring the continuance of a term of office to be for a definite period named, and until a successor should be elected and qualified, that an official bond of suretyship applied to the definite period of office named, and until such reasonable time thereafter as might be necessary for the purpose of providing a new incumbent by the appointed means. * * * We think the same construction of the statute and contract here would be correct. * * * " Adopting this principle as the correct one, the court held that only a showing of special circumstances justifying a delay beyond March 1st in the making of an appointment to fill the vacancy caused by Ring's. failure to qualify could at all extend the surety's obligation, and that, "In no event * * * should it be considered that the obligation extended beyond a reasonable time after March 1st for filling the office by appointment."

Appellee has sought to distinguish the Ring Case from the present case on the facts. But however different are the facts, the Minnesota Supreme Court did in the Ring Case declare the rule of law in that state as to the

duration of official bonds after a fixed term where the statute creating the office provides that the incumbent shall hold until his successor is elected and qualified and when the bond is similarly limited. The rule, so declared, is that liability on the bond extends only ·for such further time, after the fixed term, as is reasonably "necessary for the purpose of providing a new incumbent by the appointed means." No Minnesota decision has been cited and we have found none announcing any other rule. On this point appellee has been content to quote from 46 Corpus Juris, at page 1072 (but omitting to quote that part of the paragraph which we have italicized), as follows: "Where the bond is conditioned for the discharge of duties by the officer until a successor has been elected or appointed and has qualified, or where it is provided by law that an officer shall discharge the duties of his office until a successor has been elected or appointed and has qualified, the general rule is that, where an officer so holds over, the liability on his bond continues until such successor has qualified, although in some jurisdictions it is held that the liability extends only for such further time after the expiration of the term as is reasonably sufficient for the election or appointment and qualification of a successor. *The general rule does not apply where an officer, reelected or reappointed to succeed himself, has failed to give a bond for the new term.*"

It appears from the Ring Case that Minnesota is one of those jurisdictions which has adopted the minority rule. This bond, a Minnesota contract, was executed in the light of and is to be construed in accordance with that rule. Moreover, the general rule is subject to an exception within which this case falls. But whatever the general rule and whatever the exceptions to it, by the Minnesota rule the liability of the surety on the bond here extended after August 1, 1925, only for a reasonable time, a reasonably sufficient time within which a new bond should have been required and given.

▮▮ Just as in the case of County of Scott v. Ring, so here, the several statutes governing the filling of the office of treasurer, the term thereof, the time when a newly elected treasurer must qualify and give bond, the effect of failure to qualify and give bond, all entered into the contract as a part of it and are to be considered in determining what was the intention of the language used in the bond. Considering those statutes, can it be said the parties intended by the words "un-

til his successor is elected and has qualified" either an indefinite continuance of liability after the expiration of the fixed term or a continuance of liability for so long a time as from August 1, 1925, to November 12, 1925.

Section 2807 of the General Statutes of Minnesota for 1923 provides that school boards in independent districts shall on the first Saturday in August of each year choose a treasurer who shall hold office for one year and until his successor is elected and qualified. Section 2813 provides that all persons elected or appointed district officers shall, within ten days after notice of election or appointment, file with the clerk or secretary of the district his acceptance of the office and his official oath, or be deemed to have refused to serve. It further provides, however, that such filing of acceptance and official oath may be made at any time before action to fill the vacancy has been taken. Section 2834 provides that every treasurer shall give bond conditioned for the faithful discharge of his official duties, and that upon his failure to give bond or to give a new bond when required his office may be declared vacant and a new treasurer appointed.

Clearly it is the meaning of these statutes that a treasurer elected on the first Saturday in August for a one year term (as was Norby on August 1, 1925) shall within ten days qualify by filing his acceptance, taking the official oath and giving bond, and that failing therein another shall be elected to fill the vacancy either ipso facto resulting from such failure (section 2813) or which it is the duty of the proper officers to declare (section 2834). ·Between the day of election, on the first Saturday in August, and the time when the newly elected treasurer qualifies, there is a possible hiatus of ten days. Perhaps special circumstances might slightly lengthen the hiatus as the Minnesota Supreme Court pointed out in County of Scott v. Ring. This was the hiatus which the law contemplated when it provided in section 2807 that the treasurer shall hold office for one year and "until his successor is elected and qualified." And this was the hiatus which was contemplated by the parties to the bond when they provided in it that whereas Norby "had been elected for the term of one year from and after August 1, 1924, and until his successor is elected and qualified" the obligation of the bond should remain in full force and effect "during his continuance in office." It is to be noted in this connection that the premium charged and paid for the bond, as the record shows, was upon the the-

ceptance of the office and his official oath, or be deemed to have refused to serve, but such filing may be made at any time before action to fill the vacancy has been taken."

