**In re KASIMOV et al.**

**KASIMOV v. SOLTZ.**

**No. 7068.**

Circuit Court of Appeals, Sixth Circuit.

Jan. 17, 1936.

See, also, 71 F.(2d) 1010.

A. L. Greenspun, of Cleveland, Ohio (Leo W. Ulmer, of Cleveland, Ohio, on the brief), for appellant.

Sidney N. Weitz, of Cleveland, Ohio (Gerald A. Doyle, of Cleveland, Ohio, on the brief), for appellee.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

HICKS, Circuit Judge.

Appeal from an order of the District Court committing appellant, Joseph Kasimov, to jail for contempt for failing to comply with an order of the court requiring him to turn over certain merchandise to Soltz, trustee, in bankruptcy, of the estate of Arthur J. Kasimov and Joseph Kasimov, partners, doing business as Kasimov Bros., or pay its value, $38,091.32.

The partnership was adjudged bankrupt on December 8, 1932.

Upon application of the trustee, the referee made the turnover order on November 7, 1933. The referee found that the merchandise was in the possession or under the control of the bankrupts and that its value was as above mentioned. The bankrupts filed a joint petition to review, which on February 12, 1934, was dismissed by the court and the referee's order was confirmed. The bankrupts each sought an appeal, 71 F.(2d) 1010, which was dismissed because not allowed as provided by section 24b, Bankr.Act, as amended, 11 U.S.C. § 47 (a) (11 U.S.C.A. § 47 (b), and certiorari was denied. 294 U.S. 713, 55 S.Ct. 509, 79 L.Ed. 1247.

Thereupon, on application of the trustee, the District Court ordered appellant, Joseph Kasimov (his brother Arthur having died in April, 1934), to show cause why he should not be adjudged guilty of contempt for his failure to comply with the turnover order. Appellant answered the show-cause order and a hearing was had. Upon the hearing the appellee, trustee, introduced in evidence the turnover order made by the referee and the order of the court confirming it. Appellant offered to read from the record of the hearing on the turnover order the following extract from the testimony of his brother Arthur, to wit: "The work was divided between me and Joseph Kasimov in this way: he was the outside man; his duty was to buy merchandise, to go on the road, and I took care of the inside selling, charging, crediting, and paying for it. My brother Joseph was on the road and that was his only duty. And I had complete charge of the premises, complete charge of the sales, and of the records, and did everything inside, plus the selling. And all Joe did was to go around to the mills to buy merchandise. The same relationship was in operation during all the 19 years of our association. I had charge of the books. I was in sole and complete charge of the place of business, of the books, and also in charge of the money that came in. I took care of all the banking, the deposits. I deposited the proceeds of the sale of my merchandise in the bank; I did that myself."

The court declined to admit this evidence.

Appellant, himself, offered to testify that, prior to the bankruptcy, his sole function in the partnership was that of a traveling buyer, going from mill to mill for the purpose of buying merchandise; that he had no connection with the sales of the business, and he had no connection with the management or control of the business; that he had nothing to do with the books or records; that he had nothing to do with the disposition of any of the assets of the partnership; and that his time was limited or devoted exclusively to traveling on the road as a buyer; that he had no knowledge of any concealment of assets at the time of the bankruptcy or at any time prior thereto.

The court likewise rejected this testimony.

Thereupon appellant testified that neither on the date of the turnover order nor since had he had any of the merchandise in question or its proceeds in his possession or under his control, that he did not have any property or resources of any kind, and that he was unable to comply with the turnover order either in whole or in part.

The court committed appellant for contempt for not obeying the turnover order; hence this appeal.

Appellant filed nine assignments of error which in the brief are reduced to three propositions, to wit, that the court erred (1) in excluding the testimony of himself and his brother as to circumstances surrounding the possession of the merchandise involved or its proceeds prior to the date of the turnover order; (2) that the evidence upon which he was adjudged guilty of contempt was insufficient; and (3), that the judgment was in conflict with the law as reflected in Shulman v. United States, 18 F.(2d) 579 (C.C.A.6).

These contentions are without merit. On the contempt proceeding appellant was limited to evidence that something had occurred since the turnover order that rendered him unable to obey it. Oriel v. Russell, 278 U.S. 358, 363, 49 S.Ct. 173, 73 L.Ed. 419; Sarkes v. Wells, 37 F.(2d) 339, 340 (C.C.A.6); Levy v. Charlesworth, 74 F.(2d) 495, 496 (C.C.A.8); Regus v. Morrison, 30 F.(2d) 685 (C.C.A.5).

As to the sufficiency of the evidence upon which appellant was adjudged guilty, it is enough to say that the turnover order and his failure to obey it made at least a "prima facie case" for contempt, Berkhower v. Mielzner, 29 F.(2d) 65, 66 (C.C.A.6); Clark v. Milens, 28 F.(2d) 457, 458 (C.C.A.9), and placed the burden upon appellant of showing a "change of situation after the turn-over order" which would relieve him. He was required "to show by persuasive evidence that he was no longer in possession of the property and the circumstances under which he was deprived of its control," Oriel v. Russell, supra; Sarkes v. Wells, supra. He failed to carry the burden imposed upon him. He may not collaterally impeach the turnover order and destroy its effect by the general statement that he no longer had control over the property or its proceeds which the order solemnly adjudged to have been in his possession. He was under the necessity of offering convincing evidence of

what disposition he made of it or of what became of it.

There is nothing in Shulman v. U. S., supra, decided prior to Oriel v. Russell, out of harmony with our conclusion. We were careful to point out the "special features" of that "particular record," which controlled the result.

The order of the District Court is affirmed.