## In re RAPPIT VENETIAN BLIND CORPORATION.

### No. 39969.

District Court, E. D. New York.

Dec. 11, 1942.

T. Stanley Bloch, of New York City, for trustee.

Stephen Marlowe, of New York City, for respondent.

GALSTON, District Judge.

Bernard Gottbetter, the respondent, was the president and treasurer of the bankrupt corporation. He, his wife and his father made up the board of directors of the corporation. The sole stockholders were himself and his father. A cousin, Abraham Gottbetter, was the accountant. The respondent was in general charge of the business, which employed about ten or fifteen people. At the time of the organization of the corporation, it took over the assets of the Rappit Venetian Blind Company, a co-partnership of which Bernard Gottbetter and Samuel Gottbetter were the co-partners, and assumed its obligations.

The trustee instituted a proceeding before the referee to direct the respondent to turn over the sum of $6,793.14, alleged to represent the difference between the assets which came into the possession of the trustee and those which should have been on hand at the time of the bankruptcy. The referee found that the respondent had failed to account for at least twenty-five hundred dollars. On review of the order entered thereon, the matter was sent back to the referee with directions to file formal findings of fact and conclusions. These have since been filed and the proceedings are now before the court for confirmation.

The bankrupt's accountant testified that in the latter part of September, 1940, he opened a set of books and that at the time he did not receive any inventory records but that a figure was submitted to him. By whom does not appear. He never prepared a financial statement.

Bernard Gottbetter testified that at the time that the partnership assets were taken over, the corporation was solvent; that the net worth was about $3,000. He was unable to state what the physical inventory amounted to, but ventured an opinion that as at August 1st, it was "between $4,000 and $5,000", admitting in the next question that the figure of $5,275 as at that time was approximately correct.

Friedman, an accountant employed pursuant to an order in this proceeding, made an audit of the bankrupt's books. He found the physical inventory to be $5,275; that the amount of purchases made during that period aggregated $6,089.31; the labor cost for producing the merchandise was $3,162.30. Items of overhead consisted of $375 for rent; $118.25 for light and power; $149.59 for insurance; $53.20 as depreciation on machinery and equipment; and miscellaneous factory expenses $127.50; making a total of factory overhead of $823.54. He figured that the total cost of merchandise manufactured during the months in question, available for sale, was $15,350.15.

As to the cost of sales, familiarity with the Venetian blinds business led him to adopt a figure of 20% as an average gross profit. Sales for the period amounted to $10,780.51, and accordingly he figured $8,-624.41 as the cost of sales. Deducting such assumed cost of sales from the total cost of merchandise available for sale, he was of opinion that at the date of the close of business operations, the physical inventory

should have been $6,725.74. After allowing a credit of $332.60, he thus calculated inventory in the sum of $6,393.14 unaccounted for. Among the assets on the books, a truck was listed of the value of $400, bringing the total unaccounted for assets to $6,793.14. The accountant testified that if the sales had been made at actual cost there would still be an inventory unaccounted for in the amount of $4,237.04.

The respondent testified that at no time did he remove any of the assets of the corporation from the premises for his own use or for the use of anyone else excepting for corporate purposes in the normal course of business, and that at no time did the bankrupt take an order at a loss. He appraised the inventory on hand at the date of the bankruptcy to be $1,820.50. Also he sought to show higher costs of production and sale than those found or calculated by the trustee's account.

Without detailing all of the respondent's testimony, he in effect contended that the bankrupt suffered a loss of $8,328.-68 in the short period from August 1, 1940, to October 31, 1940, in effecting sales aggregating $10,518.01. The referee concluded that the respondent was unworthy of belief and so it would seem.

There remains for consideration the ability of the respondent to comply with the turnover order. It was said in Danish v. Sofranski et al., 2 Cir., 93 F.2d 424, 426, that the trustee is obliged to prove not only that respondents had wrongfully abstracted "this money, but how much of it they had in their hands when the referee's order passed". Now the facts here show that the petition in bankruptcy was filed in November, 1940. The order of the referee was made on April 25, 1942. Query: How much of the unaccounted for inventory, or its proceeds, was in the respondent's possession or control on April 25, 1942, a year and five months after the bankruptcy? Judge Learned Hand wrote in the foregoing case:

"The courts have met the issue of the respondent's ability to surrender in different ways, as different situations arose. * * *

"Again—and this is by far the most common situation—the respondent may steadfastly deny that he has ever received any of the property at all. Sometimes he does this upon the proceeding to punish him for contempt. That is necessarily an unsuccessful excuse, because it disputes the finding in the summary order, which since Oriel v. Russell, 278 U.S. 358, 49 S.Ct. 173, 73 L.Ed. 419, is an estoppel. It is uniformly held that in this situation he stands charged and must explain how he disposed of it."

So here the trustee made proof of unaccounted for merchandise. Thus the burden of explanation shifted to the respondent and, as has been indicated, his explanation was wholly unsatisfactory.

In the circumstances the referee's order will be confirmed. Settle order on notice.