## In re LUMA CAMERA SERVICE, Inc.

United States District Court
S. D. New York.
Feb. 9, 1949.

Glass & Lynch, New York City, (Sidney Freiberg, New York City, of counsel), for trustee.

Max Schwartz, New York City, for respondent.

840

CONGER, District Judge.

Luma Camera Service, Inc. was adjudged a bankrupt on April 23, 1942. On August 9, 1943, Joseph F. Maggio, the president and manager of the bankrupt was directed by order of a Referee in bankruptcy to turn over to the Trustee photographic supplies and equipment of the value of $17,500, or the proceeds thereof. This order was affirmed by the District Court, 57 F.Supp. 632, and by the Court of Appeals, Second Circuit. Zeitz v. Maggio, 145 F.2d 241. Petition for certiorari was denied by the Supreme Court, 324 U.S. 841, 65 S.Ct. 587, 89 L.Ed. 1403.

On December 7, 1944, the Trustee moved to punish Maggio for contempt for failure to comply with the order of August 9, 1943, which motion was granted, and such determination was successively affirmed by the District Court and the Court of Appeals, 157 F.2d 951. Certiorari was granted by the Supreme Court, 330 U.S. 816, 67 S.Ct. 970, 91 L.Ed. 1269 and thereafter the Court reversed the Court of Appeals and the District Court, and remanded the case " * * * for further proceedings consistent with the principles laid down in this Court's opinion." 333 U.S. 56, 77, 68 S.Ct. 401, 412, 92 L.Ed. 476.

The Trustee has again moved to punish Maggio for failure to obey the turn-over order of August 9, 1943. The motion was argued before me and affidavits were submitted by both sides. After hearing the arguments and reading the briefs, I felt that this issue could not and should not be decided on papers and I ordered that the matter be tried before me. This was done and now upon the evidence taken on those hearings. I have to decide this important and highly controversial question.

The "principles" of the Maggio opinion include a re-affirmation of the rule of Oriel v. Russell, 278 U.S. 358, 49 S.Ct. 173, 73 L.Ed. 419, in which it was held that a turn-over order is res judicata and is not subject to collateral attack in the contempt proceeding. But the Court further asserted that " *. * * the bankrupt may be permitted to deny his present possession and to give any evidence of present conditions or intervening events which cor-

roborate him. The credibility of his denial is to be weighed in the light of his present circumstances." 333 U.S. page 76, 68 S.Ct. page 411.

"This view is no departure from the settled procedure of the past except for what is implicit in 'present conditions'. The bankrupt always could show in the contempt proceedings any intervening event in exculpation of his failure to disgorge." See In re Sussman, D.C., 85 F.Supp. 570; Oriel v. Russell, supra.

■ The task commences with the turn-over order intact. I must assume that Maggio had the property on August 9, 1943. He denies that he presently possesses it, or the proceeds. There was no proof as to any intervening event which might explain his lack of present possession. He does, however, offer evidence of his present conditions, and his conditions following the turn-over order, in aid of his denial. Most of this evidence was contained in the record upon which the Supreme Court passed. And the Court remarked that "It is clear that the District Court in the contempt proceeding attached little or no significance to Maggio's evidence or testimony, although the Court gave no indication that the evidence was incredible." 333 U.S. page 71, 68 S.Ct. page 409.

■ I take it as my duty now, therefore, to give significance to this evidence and to find to what extent it is probative of the fact that he does not presently possess the property and is not willfully disobeying the turn-over order.

The Court had this to say about the duty of the trial court in this regard: "The trial court is obliged to weigh not merely the two facts, that a turnover order has issued and that it thas not been obeyed, but all the evidence properly before it in the contempt proceeding in determining whether or not there is actually a present ability to comply and whether failure so to do constitutes deliberate defiance which a jail term will break." 333 U.S. page 76, 68 S.Ct. page 411.

Through his own testimony and that of other witnesses including his wife, his two daughters, his son-in-law, his brother

and a clergyman, Maggio showed that from the time Luma Camera Service, Inc. went out of business on December 30, 1941 to about August, 1942, he was employed for three months with earnings of approximately $40. a week. From August, 1942 to November, 1944, he was employed at a salary of $170. a month; that from January, 1941 to the latter part of 1946 he supported his wife, mother-in-law, his married daughter and grandchild, and his youngest daughter, who first obtained employment during the latter part of 1946; for a period of about two years, from 1944 to 1946, his wife was obliged to work in order to assist in maintaining the household; that he is totally disabled and has been since November, 1944; that he has been without employment since that time, existing on sick benefits and disability benefits amounting to $250. a month as well as money borrowed from his brother, his daughter and son-in-law, except that his youngest daughter has contributed $10. a week from her earnings since the latter part of 1946; that his borrowings amounted to about $4,000.; that his inability to pay the premiums forced cancellation in 1943 of one-half of $50,000. of life insurance, and obliged him to borrow the full cash surrender value of his remaining policies between 1943 and 1945 in order to meet the premiums on them.

Maggio showed the usual household expenses over the years, plus legal fees, medical expenses, taxes, insurance, interest on the mortgage and other miscellaneous expenses. He testified that since 1943 he had not taken a vacation, nor entertained guests, although he had customarily done so prior to 1943. His home, which is in his wife's name is encumbered by mortgages in excess of $8,500. and a judgment lien in excess of $8,000. It has not been painted on the outside in fifteen years, nor decorated inside for ten years.

There was testimony in addition to show that since August 9, 1943 his married daughter had given her father various sums from time to time amounting to around $1,000.; that since 1943 no new furniture had been bought for the house, although now the furniture and furnishings of the home are worn out and neglected looking and need replacing.

The testimony of Maggio was that he has no real estate nor personal property and no money nor property of any kind.

All of Maggio's proof before me tended to show his present inability to comply with turn-over order as well as his lack and want of possession of the goods sought to be turned over or its proceeds. In other words he says, "I have nothing. I can't comply."

I have recited substantially all the facts presented on behalf of Maggio in the hearings before me. I believe them to be true. Assuming as I must that on August 9, 1943, Maggio had in his possession the goods ordered to be turned over, and even in the face of the fact that no explanation of the ultimate disposition of these goods has been given, still the record of his present condition indicates that he has no ability to comply.

In cases of this kind it is most common to meet this same pattern of defense. The turn-over order says the bankrupt had the goods on a certain date and he is ordered to make return. The answer usually is, "I never had the goods. I am impoverished."

These cases present serious and vexing problems.

The Circuit Court of Appeals itself felt that Maggio could not comply with the turn-over order. 157 F.2d 951. I have come to the same conclusion. I am persuaded that considering all the circumstances including the great period of time that has elapsed since the turn-over proceedings occurred Maggio cannot comply with the order.

Having come to that conclusion I believe that the opinion of the Supreme Court warrants my denying the application to punish Maggio for contempt. In fact, I feel that the opinion of the Supreme Court suggests that result. See 333 U.S. page 77, 68 S.Ct. page 412.

Petition dismissed.

Settle order.