### In re SUSSMAN.

No. 83207.

United States District Court
S. D. New York.

Feb. 9, 1949.

David Haar, New York City, for trustee Lewis H. Saper.

Binder Brothers, New York City, for bankrupt, Martin Binder, New York City, of counsel.

CONGER, District Judge.

Harry Sussman was adjudicated a bankrupt by order entered on January 19, 1944, after filing of an involuntary petition in bankruptcy against him by certain creditors on January 6, 1944. The bankrupt's occupation and business prior to the filing of the petition was that of cashing checks for fees and lending money.

He filed schedules on March 16, 1944 disclosing liabilities of $163,420.13 and assets of $254,144.44, including $223,774 in negotiable paper, all but about $4,500 of which consisted of promissory notes and checks made or endorsed by one W. E. Cohen.

The Referee in Bankruptcy, in passing upon the Trustee's petition, dated January 31, 1947, for an order directing the

bankrupt to turn over a certain sum, found that Sussman had withdrawn from various bank accounts and had received from other sources the sum of $49,871.81 after October 28, 1943 and up to and including December 9, 1943. He further found that he had disbursed the sum of $8,500 from October 28, 1943 to the date of the petition, and had turned over to the Trustee $6,000 withdrawn from a vault in March, 1944. He credited the bankrupt with $12,000 as living expenses from November 1, 1943 to the date of the turn-over proceeding, and charged him with possession or control of the sum of $23,371.81. The Referee's finding of fact made October 17, 1947 relevant to this issue was as follows: "12. The bankrupt has in his possession or under his control the sum of $23,371.81 which he had at the time of bankruptcy."

The Referee directed the bankrupt by order, dated October 28, 1947, to turn over such amount, which order was confirmed by order of Judge Rifkind, dated December 29, 1947. No appeal was taken from the order of Judge Rifkind. No payment was made by the bankrupt on the sum which he was ordered to turn over to the Trustee.

This, then, is an application by the Trustee to punish the bankrupt for his contempt of Court for failure to comply with the order of October 28, 1947, made by the aforesaid Referee. The application came before me for argument on February 11, 1948, but decision was reserved until the lawyers and the Court could make a study of the case of Maggio v. Zeitz, 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476, which had been decided by the Supreme Court of the United States just a few days before.

On the argument before me the bankrupt presented an affidavit in and by which he attempted to show that he did not have the money with which he had been charged; that he did not have it when the turn-over proceedings were had and that he was unable to comply with the order.

After a study of the Maggio opinion I finally determined that the issues could best be decided after a hearing at which both sides could present testimony. Several hearings were had. As the result of those hearings the issue has been fairly and well presented to me.

In his defense, the bankrupt denied that he ever had the money or, perhaps to put it more correctly, he asserted that he had fully accounted for the money before the Referee. This defense I ruled out at the hearing. The order of October 28, 1947 of the Referee is res judicata. In this proceeding the bankrupt may not go behind that order and show that the Referee was in error. Maggio v. Zeitz, supra.

The Maggio decision is the last word on this very troublesome question of turn-over orders and contempt proceedings arising out of and because of such an order.

Since 1929, Oriel v. Russell, 278 U.S. 358, 49 S.Ct. 173, 73 L.Ed. 419 has been the leading case on this subject. In the Maggio case the Court reaffirmed its pronouncement that the turnover order is res judicata and is not subject to collateral attack in the contempt proceedings. But it went on to say that " * * * the bankrupt may be permitted to deny his present possession and to give evidence of present conditions or intervening events which corroborate him." 333 U.S. at page 76, 68 S.Ct. at page 411.

This view is no departure from the settled procedure in the past except for what is implicit in "present conditions." The bankrupt always could show in the contempt proceedings any intervening event in exculpation of his failure to disgorge. Oriel v. Russell, supra.

And in this jurisdiction, at least, it was generally held that once an order was made compelling the turn-over of either money or property, there was an irrebuttable presumption of continuing ability to comply, and that presumption stood indefinitely and could be overcome by the accused only if he showed some disposition of the property by him subsequent to the turn-over proceedings. The Court in the Maggio case said, "We do not believe these views are

572

required by Oriel v. Russell, 278 U.S. 358, 49 S.Ct. 173, 73 L.Ed. 419, despite some conflicting statements in the opinion * * *." 333 U. S. at page 71, 68 S.Ct. at page 409.

With the standard set by Maggio v. Zeitz, supra, I will now take up the instant case from a factual standpoint.

By the order of October 28, 1947 (which order may not be impugned), the bankrupt was charged with the custody and control of $23,371.81, part of the assets of the estate and which sum he was ordered to pay over to the Trustee of the estate. With this as a starting point we now look at bankrupt's defense for his failure to comply with the order.

By his affidavit (February 10, 1948) and by his testimony taken a few weeks later he swears that he is unable to comply with the order; that he has no part of that money; that he has no property of any kind or nature except his clothing and personal accessories; that he has not worked since January 19, 1947; that his living expenses for the year 1947 were about $2,000; that this sum came from various sources such as wages earned in January, 1947, savings from a previous employment, a gift of money from a friend, proceedings of the sale of a watch and loans from four friends amounting to $1,350. It should be noted that this testimony covered largely the year 1947. Most of it included a period of time prior to the order of October 28, 1947.

The bankrupt was corroborated by his wife who testified as to their very modest living; by others who made loans to him and by the woman who bought the watch from him for $250. None of this testimony was directly contradicted nor refuted. From a practical standpoint it would be almost impossible to do so. The story of the borrowings and the sale of the watch appear to me to be a bit on the fantastic side, yet I cannot say that the story of these corroborating witnesses is untrue. Several of the people who testified that they loaned the bankrupt money appeared to me to be sensible, decent and reliable. I can't bring myself to hold that these people committed perjury. Yet in weighing all the evidence the bankrupt has not convinced me of his inability to comply with the turn-over order.

Even assuming as true the bankrupt's story as to his very modest manner of living and of his borrowings and other methods of obtaining money in order to support himself and wife for the year 1947, still I cannot accept that defense here as a full and complete exculpation. I must consider all the evidence. I cannot leave out of my mind the judicial determination that three or four months before October 28, 1947 bankrupt had in his possession and control the sum of $23,000 of the assets of the estate. The time element here is quite important.

His explanation of his inability to turn over the money is not sufficient. Of course, it is natural to presume that any one who evidences no indicia of affluence is not possessed of it. But it is also natural that one who must have known that he would be called upon to explain the loss or disappearance of a substantial sum of money would not likely exhibit signs of affluence.

I feel that the Maggio case is not to be read as authority for rendering the turn-over order of no effect under these circumstances.

The Trustee's application is granted.

Submit order on notice.