In re SKODNICK.

No. 47482.

United States District Court
E. D. New York.

July 10, 1950.

Max Schwartz, Brooklyn, N. Y., trustee, for the motion.

I. Robert Bassin, Jamaica, N. Y., for respondents.

BYERS, District Judge.

This is a petition to review a decision of the Referee adverse to the trustee in bankruptcy, in a turn-over proceeding having to do with Account No. 239944 in the Jamaica Savings Bank denominated "Peggy Rubinow in Trust for Celia Skodnick", Peggy being the bankrupt's married daughter.

The question for decision is whether that account is an asset of the bankrupt. The Referee has decided that it is not, but in truth is the property of her husband, David, whose affidavit, verified February 28, 1949, seems to have been treated as a kind of cross claim against the trustee.

The latter urges that the burden of proof to sustain this cross claim lay with David, in view of Peggy's concession that the bank account was not hers and that none of her own funds constituted any part of it. That contention is deemed to be sound by this Court, since all but a few deposits were made by Celia, the bankrupt, and a few made by Peggy were not of her own money.

The Referee considers this account to have constituted a "Totten trust" under the New York cases, on the part of David as the real trustee for the benefit of Celia, his wife. The essential components of such a trust are lacking, in that David could have maintained such an account with his own funds in his own name in trust for Celia; and Peggy in like manner could have done so with *her* funds, had she been so disposed. The proof, however, is clear that neither of these courses was followed, but that Celia made substantially all of the deposits, retained the passbook in her possession (which is significant where a Savings Bank account is involved), and that the moneys so deposited were received by her from David, from time to time, because he turned over his earnings to her to pay household expenses, permitting her to accumulate as hers the excess funds not so disbursed.

It is a significant circumstance that a previous savings account in the same bank had been maintained by Celia in her own name, in which she accumulated just such

funds to the extent of about $1280 as to which she withdrew $1270 on October 30, 1944, and gave that sum to her husband at about the time that an action was started to recover judgment against her for money loaned to her on a second mortgage.

The new account, which is the one here involved, was opened seventeen days later in the style described; as to the true constituency of the second account, no one could be blamed for thinking it may have represented a change in name but not in nature.

The narrow question then is whether the moneys that went into the new account were David's or Celia's. Thus the burden of proof became important, which seems to have eluded the Referee's attention, for he quotes from the opinion in Maggio v. Zeitz, 333 U.S. 56, at page 64, 68 S.Ct. 401, 405, 92 L.Ed. 476, in which the Court says that turnover orders must be supported by "'clear and convincing evidence,' Oriel v. Russell, 278 U.S. 358, 49 S.Ct. 173, 174, 73 L.Ed. 419, * * *. It is the burden of the trustee to produce this evidence, however difficult his task may be." That was a case in which the Court was passing upon a motion to punish for contempt for failure to obey a turnover order, and the facts involved were quite remote from those presented by this record.

The Referee held that the trustee had failed to sustain the burden of proof which rested upon him, but that position completely ignores the manifest result of Peggy's disclaimer of any interest in the account, because that would result in establishing that the account is Celia's, unless a third person could demonstrate a title superior to hers. That is what David attempted to do, and it seems clear that the burden of persuasion rested with him.

David's testimony as to how he maintained the identity of his own funds, by giving them to Peggy's husband, Joseph Rubinow, a lawyer, and the record thereof in a book containing entries made by the latter, as to which at the next hearing he did not remember, cannot be deemed convincing on this review. At that same later hearing, David said that he gave moneys (other than those involved in real estate transactions) to Rubinow, but he did not remember when and when asked what kind of money, said: "When I got salaries, I give it to my wife and she bring it over to Joseph Rubinow."

Upon being pressed, he said further: "I can't tell you. I don't see to who she give the money."

The foregoing may have been glossed over by the Referee if he thought the burden of persuasion remained with the trustee, but he might come to a different view if he should conclude that the cross claimant, David, undertook to prove that the moneys were his own in spite of their being carried by Peggy in trust for Celia.

The figures in evidence concerning David's net income, taken from the income tax returns for the years 1944-1947, inclusive, which returns he said were true, seem to be inconsistent with his wife's accumulation of $1304.30 by March 10, 1948, although the apparent discrepancy may disappear upon a more careful inquiry involving a complete financial disclosure by both David and Celia; at least that possibility cannot be ruled out.

Other objections to the decision require brief mention:

1. The trustee objects to the reliance of the Referee upon a letter written to him, dated November 25, 1949, from which a quotation is set forth in the Referee's decision.

This objection is not deemed important since the letter states only the balance and the fact that the bank makes no claim to any part of the funds. This could well have been stipulated.

2. The admission into evidence of the history of the claim made by the Brooklyn Trust Company against this bankrupt.

The quotation from the Schedules and the discussion of the circumstances involved seem to have no bearing on the issues in the turnover proceeding.

3. The reliance of the Referee upon statements made by Joseph Rubinow, the attorney for the bankrupt, which occur on pages 4 and 13 of the Referee's decision.

Colloquy is not evidence, and if the question referred to was deemed to be pertinent in a legal sense, Rubinow should have testified as a witness and subjected himself to cross-examination.

4. Collateral matters not in issue were discussed by the Referee somewhat at length at pages 6, 10 and 13 of his decision.

■ Evidently the Referee deemed these matters of some possible bearing, perhaps in the nature of circumstantial evidence pertaining to the use that had been made of the proceeds of Celia's Savings Bank account, as throwing light upon their legal status. It seems to me that this was questionable in view of the professed attitude by both Celia and her husband of aloofness from and ignorance of the financial affairs of the other. I should suppose that these matters were rather remote from the legal questions presented in this proceeding.

Other topics which may justify comment are the following:

(a) The receipt by David of $401.01, being the proceeds of a life insurance policy on the life of his deceased first wife, of which policy he seems to have been the beneficiary. That sum went into this account, but it varied only in amount from other deposits said to have had their origin with David; that check could not change the character of this Savings Bank account, in view of the testimony that all the deposits made by Celia were of moneys which she received from David.

(b) The passage on page 13 of the decision, reading as follows: "I cannot determine from Mr. Rubinow's remarks what mortgage he is referring to" is not understood, but its bearing upon the issues in this proceeding seems to be remote.

(c) The trustee objects to the practice seemingly followed by the Referee of allowing the blanket introduction of testimony, instead of reading into this record that which is deemed to be pertinent to a specific question.

This objection seems to be well taken. No one should be required to deal with a record in gross if only part of it is relied upon to demonstrate a given proposition.

(d) The attitude of the Referee toward the Brooklyn Trust Company's claim.

It would seem that, if that claim had been filed and allowed by the Referee, its nature should not be permitted to influence the disposition of this proceeding; if it did not represent an authentic loan which remained unpaid, then the claim itself should have been attacked in the proper way and dealt with on the merits.

■ Pursuant to General Order 47, the decision of the Referee is recommitted to him for the taking of additional testimony, if he deems that to be appropriate, or for general reconsideration in light of the matters above discussed. To this extent the petition to review is granted. Settle order.