### In the Matter of MURRAY PACKING CO., Inc., Bankrupt.

United States District Court
S. D. New York.

Dec. 5, 1961.

Booth, Lipton & Lipton, New York City, for trustee.

Alex L. Rosen, New York City, for Joseph Pagano.

M. Jay Fein, New York City, for Stanley Weinberg.

McGOHEY, District Judge.

Two petitions to review an order of the Referee in a turn-over proceeding are here considered. One of the petitions is by the trustee, who challenges the correctness of so much of the order as refused to direct Stanley Weinberg, the secretary-treasurer of the bankrupt, to turn over to the trustee the sum of at least $50,000. The second petition is by the bankrupt's president, Joseph Pagano, who challenges the Referee's jurisdiction to pass upon the merits of the claim asserted in his answer that the $745,000. which the Referee ordered him to turn over to the trustee had come into his possession as loans secured by his promissory notes.

The turn-over proceeding was commenced by the receiver, for whom the trustee was later substituted. The petition alleged that Pagano was, and since before the filing of the involuntary petition in bankruptcy on April 11, 1961, had been, in possession of various sums belonging to the bankrupt amounting to

$657,000.; and that during the same period Pagano and Weinberg had been and still were in possession of further sums belonging to the bankrupt totaling $88,000.

Pagano, in his answer, admitted that, between March 20, 1961 and March 29, 1961, he received funds of the bankrupt totaling $745,000. He alleged, however, that these were loans secured by his promissory notes. He further alleged that these loans had all been made prior to the institution of the bankruptcy proceeding; and that the money was not in the actual or constructive possession of the Bankruptcy Court.

Weinberg, in his answer, denied ever having had in his possession or control any part of the $88,000. mentioned in the petition, or any other property of the bankrupt. He further alleged that he would be "utterly unable to comply with" any order "requiring him to turn over and deliver the said money or any part thereof."

Both answers challenged the Referee's jurisdiction summarily to decide the issues raised thereby.

When the matter came on for hearing, Pagano and Weinberg renewed their challenges, whereupon the Referee began an "immediate investigation to determine whether jurisdiction exists." At the start of the hearing which followed, the bankrupt's account books and other records which previously were missing, were produced by Weinberg's attorney. He represented that, only that day, they had been delivered by some unknown messenger to his office, in his absence; and that, without examining them, he had forthwith brought them before the Referee. These representations were not challenged. Upon examination of the records in the Referee's presence, promissory notes purportedly signed by Pagano were found protruding from one of the bankrupt's books of account at various pages.

Pagano and Weinberg both testified that all of the money, amounting to $745,-000., was withdrawn during the period March 20 to March 29, 1961, on checks of the bankrupt signed by both men in their official capacities; that, although Weinberg accompanied Pagano to the bank when withdrawals were made, the money actually went to Pagano in exchange for his promissory notes. Weinberg identified the notes which protruded from the ledger as those given by Pagano. He also identified the ledger entries showing the several withdrawals charged as loans to Pagano's account. Weinberg denied having ever received any part of the amounts withdrawn. Pagano, when asked by counsel for the trustee what he had done with the money, declined to tell on the ground that to do so might tend to incriminate him.

An official of the bankrupt's bank testified on direct examination that on two occasions on March 20, he was present and assisted Pagano and Weinberg in cashing checks totaling $100,000.; that in the morning he saw them receive $62,-000., $12,000. of which he saw carried away by Pagano and $50,000. carried away by Weinberg; that in the afternoon he saw the balance of $38,000. received by both men but carried away by Weinberg. However, when pressed on cross-examination, this official changed his earlier testimony and said he had not been present in the afternoon when the $38,000. was withdrawn. Weinberg swore he had not carried away any of the money either in the morning or in the afternoon.

After hearing the foregoing testimony, the Referee held he had summary jurisdiction to decide the issues as to both Pagano and Weinberg, and the hearing continued to its conclusion, under a stipulation and ruling that the testimony "given on the question of jurisdiction" would be "deemed part of the testimony in the whole case."

■■ The Referee held as to Weinberg that, since he made no claim, "colorable or otherwise," to the $88,000. which the petition alleged he had received, the only issue as to him was whether he then had that money in his possession.

This, of course, it was the trustee's burden to show by clear and convincing evidence.[1] All he offered, however, was the testimony of the bank official; and this, the Referee found, was not sufficiently clear and convincing to sustain the trustee's burden. The Referee commented on the official's change of testimony. It certainly can't be said that the Referee, who had the advantage of seeing as well as hearing this witness, was clearly erroneous in so finding.

The Referee's order as to Weinberg is affirmed.

■ With respect to Pagano, the Referee found (a) that the trustee "proved by clear and convincing evidence" that Pagano's withdrawals aggregating $745,000. were without color of right or title; and (b) that Pagano was, at the time of the filing of the bankruptcy petition "and still is, in present possession of the money belonging to the bankrupt." These ultimate findings as to Pagano rested, in turn, on the Referee's subsidiary finding that the "loan nature" of the withdrawals as testified to by Pagano and Weinberg was "wholly and completely incredible." The Referee's reaction to the testimony of these two, while altogether understandable, is not enough to support a decision which he lacked jurisdiction to make. It is not for him, in a turn-over proceeding, to decide the merits of really controverted issues. This is well established.[2] May v. Henderson,[3] on which the Referee relied, is not to the contrary.

Pagano's defense, however improbable it may seem, is no more frivolous than that of the plaintiff in Ford v. Magee, supra. Pagano is entitled to have its merits decided in a plenary suit.

The Referee's order as to Pagano is reversed without prejudice to a plenary suit by the trustee.

So ordered.

---

1. Oriel v. Russell, 278 U.S. 358, 49 S.Ct. 173, 73 L.Ed. 419.

2. Cline v. Kaplan, 323 U.S. 97, 99, 65 S. Ct. 155, 89 L.Ed. 97; Slenderella Systems of Berkeley, Inc. v. Pacific Tel. & Tel. Co., 2 Cir., 286 F.2d 488; Ford v. Magee, 2 Cir., 160 F.2d 457; In re Wire Corporation, D.C., 131 F.Supp. 586.

3. 268 U.S. 111, 45 S.Ct. 456, 69 L.Ed. 870.