PROJECT B.A.S.I.C., Plaintiff, Appellee,

v.

Stephen J. O'ROURKE, et al.,
Defendants, Appellants.

PROJECT B.A.S.I.C., Plaintiff, Appellee,

v.

Jack KEMP, et al.,
Defendants, Appellants.

Nos. 89–2114, 89–2171.

United States Court of Appeals,
First Circuit.

Heard May 9, 1990.

Decided July 6, 1990.

---

Stephen J. Reid, with whom Karen A. Pelczarski and Blish & Cavanagh, were on brief for Stephen J. O'Rourke and The Housing Authority of the City of Providence.

John P. Schnitker, with whom Stuart M. Gerson, Asst. Atty. Gen., Lincoln C. Almond, U.S. Atty., and Michael Jay Singer, Atty., Appellate Staff, U.S. Dept. of Justice, Gershon M. Ratner, Associate Gen. Counsel for Litigation, Howard M. Schmeltzer, Asst. Gen. Counsel for Litigation, and Joseph W. Lobue, Trial Atty., U.S. Dept. of Housing and Urban Development, were on brief for federal appellants.

Deval L. Patrick, with whom Timothy J. Dacey, Stephanie S. Lovell, Gail A. Goolkasian, Hill & Barlow, Steven Fischback, Rhode Island Legal Services, Barbara R. Arnwine and Paul Holtzman, Lawyers Committee for Civ. Rights Under Law, and Helen Hershkoff, American Civ. Liberties Union Foundation, were on brief for Project B.A.S.I.C.

Jane M. Smith, Carleton K. Montgomery, Fried, Frank, Harris, Shriver & Jacobson, Everald Thompson, NAACP Sp. Contribution Fund, Claire Gonzales, Nat. Council of La Raza, Nat. Low Income Housing Coalition, and Arthur A. Baer, Puerto Rican Legal Defense & Educ. Fund, Inc., amici curiae.

Before BREYER, Chief Judge, and BOWNES, Senior Circuit Judge, and TORRUELLA, Circuit Judge.

BREYER, Chief Judge.

In April 1989, Project B.A.S.I.C. ("BASIC"), a Rhode Island tenant-advocacy organization, asked the federal district court to issue a preliminary injunction forbidding the Providence Housing Authority (and the federal Department of Housing and Urban Development) from demolishing several high-rise towers at the Hartford Park housing project in Providence. BASIC claimed that the proposed demolition violated several federal statutes, including 42 U.S.C. § 1437p, which says that HUD must approve all such demolitions and prohibits HUD from giving its approval unless certain conditions are met. The district court denied BASIC's request for an injunction. We affirmed that denial on appeal. *See Project B.A.S.I.C. v. Kemp*, 721 F.Supp. 1501 (D.R.I.1989), *aff'd mem.*, No. 89–1910 (1st Cir. Oct. 5, 1989), *on denial of reh'g*, No. 89–1910 (1st Cir. Oct. 12, 1989). Since then, PHA has demolished the towers.

In the same opinion in which it denied BASIC's request, the district court ordered PHA to,

> proceed as soon as possible to begin construction of the 240 public housing units, funded by HUD, needed to replace the 240 units lost due to the past and planned demolition of the high-rises.... [and] to complete construction of all 240 units of replacement housing within 23 months of the date of this Opinion [i.e., by June 17, 1991].

721 F.Supp. at 1515. PHA and HUD now appeal from this "time schedule" injunctive order. We agree with PHA and HUD that the particular reason given by the district court for its injunctive order does not provide that order with adequate legal support. Nonetheless, the court may have had other adequate legal grounds for issuing the order. We therefore remand for further consideration by the district court.

## I

### Preliminary Matters

■ BASIC raises several procedural or jurisdictional objections to PHA's (and HUD's) appeal from what amounts to a preliminary injunction. *See* 28 U.S.C. § 1292(a)(1) (authorizing interlocutory appeals from district court orders granting

injunctions). First, it suggests that our earlier decision in this case somehow forecloses this appeal. That earlier decision, however, concerned BASIC's appeal from the district court's *denial* of its request for injunctive relief. This appeal concerns the district court's *granting* of a "time schedule" order. The legal questions we decided then do not dispose of the cross-appeal before us now.

■ Second, BASIC says that appellants may not now argue that the "time schedule" order is unlawful because they failed to raise this issue in the district court. Appellants did not do so, however, because the district court entered that order *sua sponte*, at the same time that it denied BASIC's request for an injunction. The appellants might have sought a rehearing before appealing, but the law did not require them to do so.

■ Third, BASIC suggests that appellants expressly *waived* any objection to the "time schedule" order in a brief submitted to the district court. They point out that, although the appellants did not ask for rehearing after the district court issued its memorandum and order, BASIC did ask for a rehearing; *and*, when appellants opposed BASIC's rehearing request, they *not only* failed to complain about the "time schedule" order, *but also* said they would comply with that order. To be specific, PHA, in its opposition to BASIC's motion for reconsideration, stated that,

> the [district] Court has ordered the replacement housing to be constructed within twenty-three (23) months, *which PHA fully intends to do.*

(Emphasis added.) This statement, however, was merely a single, isolated sentence appearing in an opposition brief that made no reference whatsoever to the possibility of appellate review. Consequently, we cannot treat it as a waiver of the PHA's right to appeal.

Fourth, BASIC says that HUD lacks standing to appeal the order, for the order tells PHA, not HUD, what to do. Regardless, PHA has standing, and it also appeals. Hence, we need not consider whether HUD has standing as well. *See Carey v. Popu-*

*lation Services Int'l,* 431 U.S. 678, 682, 97 S.Ct. 2010, 2014, 52 L.Ed.2d 675 (1977); *Arlington Heights v. Metropolitan Hous. Dev. Corp.,* 429 U.S. 252, 264 n. 9, 97 S.Ct. 555, 562 n. 9, 50 L.Ed.2d 450 (1977).

## II

### *Legal bases for the district court's order*

### A. The amended version of 42 U.S.C. § 1437p

■ The appellants argue that the district court's "time schedule" order rests upon a legal mistake. The district court based its order upon language in the Housing and Community Development Act of 1987, Pub.L. No. 100–242, § 121, 101 Stat. 1815, 1837–39, which amended the "HUD demolition permission" statute, 42 U.S.C. § 1437p. This amendment took effect in 1988 on the day *after* HUD approved the PHA's request to demolish the project's towers. (We shall refer to it as the "1988 amendment.")

Before the basic statute was amended, it prohibited HUD from granting a demolition request unless (among other things) the local housing agency undertaking demolition had consulted with affected tenants and made provision for relocating them to new housing. *See* 42 U.S.C. § 1437p(b)(1, 2). As amended, the statute imposes the additional condition that the public housing agency must have "developed a plan" for *replacing* the demolished housing. *See* 42 U.S.C. § 1437p(b)(3). The plan must include, for example,

> a schedule for completing the plan within a period consistent with the size of the proposed demolition ..., except that the schedule shall in no event exceed 6 years.

42 U.S.C. § 1437p(b)(3)(D).

The district court recognized that the amendment's requirement of a housing replacement plan (and related schedule) did not apply to HUD's approval of the demolition project, for HUD approved the PHA's demolition request before the 1988 amendment's effective date. The district court believed, however, that the amendment's requirement *did* apply to PHA's demolition

activities, because these activities were scheduled to take place *after* the amendment's effective date. Indeed, PHA, when it applied for demolition approval in January 1988, had submitted a 23–month replacement-housing schedule (with completion scheduled for December 1989). The court noted that PHA had fallen behind that schedule. It concluded that the statutory language quoted above authorized it to order PHA to comply at least with a more generous revised schedule requiring completion by June 1991.

We previously held that the 1988 amendment does not apply to a "HUD approval" given before the amendment took effect. *See Project B.A.S.I.C. v. Kemp,* No. 89–1910 (1st Cir. Oct. 5, 1989) (mem.), *aff'g* 721 F.Supp. 1501 (D.R.I.1989). We now conclude, similarly, that the amendment does not apply to the post-amendment activities (of the sort at issue here) of a public housing authority that requested and received HUD's approval before the amendment took effect. Our reasons are as follows.

First, the literal language of the amended statute, although ambiguous, somewhat favors the view that the amendment does not apply to demolitions that HUD approved *before* the amendment's effective date, even if the approved demolition actually takes place subsequently. The statute, as we explained earlier, enumerates conditions that must be met before HUD may approve a request to demolish public housing. *See* 42 U.S.C. §§ 1437p(a, b). The 1988 amendment added a number of new conditions, which appear in § 1437p(b)(3). (For ease of reference, the entire statute is set out in an appendix to this opinion.)

Section 1437p(b), as amended, consists of one long sentence. It says, in condensed form,

*The Secretary may not approve* an application [for demolition] ... unless ... the application from the public housing agency [ (1) has been developed in consultation with tenants, (2) provides for tenant relocation, and unless] (3) the public housing agency has developed a plan for the provision of ... additional ... public housing ..., which plan [satisfies a host of specific detailed conditions, including scheduling conditions].

42 U.S.C. § 1437p(b) (emphasis added). This long sentence refers to, and limits, the authority of "the Secretary" (the Secretary of Housing and Urban Development, *see* 42 U.S.C. § 1437a(8)). It explains which demolition applications *"the Secretary"* may or may not approve. It speaks of a housing-replacement plan only insofar as it makes a public housing agency's developing such a plan a prerequisite for obtaining *"the Secretary['s]"* approval of a demolition application. It says nothing about imposing new requirements upon public housing agencies that have *already received* the Secretary's approval for their demolition applications. Such applications would have been approved if, and only if, the proposed demolition met the conditions in §§ 1437p(b)(1) & (2) and in § 1437p(a) (which also begins "The Secretary may not approve an application [to demolish housing] ... unless the Secretary has determined that" certain conditions are met). What, in the language of this sentence, suggests that a housing agency must develop a different housing-replacement plan *after* it had received the necessary approval? What suggests that only the housing agency, but not "the Secretary," must (in some circumstances) comply with § 1437p(b)(3)? How could one read this language to reach that result?

Other statutory language added by the 1988 amendment provides a possible answer to these questions. This language appears in new subsection 1437p(d), and it says that a,

public housing agency shall not take any action to demolish or dispose of a public housing project ... without obtaining the approval of the Secretary and satisfying the conditions specified in subsections (a) and (b) of this section.

The words "subsections (a) and (b)" refer to §§ 1437p(a) & (b), which we discussed in the last paragraph. BASIC reads these words as imposing a separate and independent obligation upon the housing agency to comply with the conditions in §§ 1437p(a) & (b), including the new housing-replacement-

plan requirement in § 1437p(b)(3), even where the Secretary need not comply.

The words in § 1437p(d), however, do not say that a public housing agency must satisfy "conditions" *in addition* to those that must be met to obtain HUD's approval. On the contrary, it says that a PHA must satisfy "the conditions in subsections (a) and (b) of this Section," which, as we have explained, are precisely the conditions that must be met in order to obtain HUD's approval. The most natural way to read these words is as if they said that the public housing agency "must satisfy the subsection (a) and (b) conditions that the Secretary must determine are satisfied before the Secretary may grant approval." Read this way, the provision means that, if HUD's approval is necessary for a demolition project, the public housing agency has an *independent* legal obligation to satisfy *whatever conditions are necessary for HUD's approval.* This was not well-understood under pre-amendment law, *see Edwards v. District of Columbia*, 821 F.2d 651 (D.C.Cir.1987) (holding that § 1437p did not prevent a public housing agency from "constructively demolishing" a project through neglect without HUD's approval), and the legislative history shows that Congress enacted § 1437p(d) to correct this misunderstanding, *see* H.R.Conf.Rep. No. 426, 100th Cong., 1st Sess. 172 (1987), *reprinted in* 1987 U.S.Code Cong. & Admin. News 3317, 3458, 3469.

As we have already explained, the creation of a § 1437p(b)(3) housing-replacement plan with a related schedule *was not* a condition of HUD's approval here, because that approval was given before § 1437p(b)(3) took effect. Consequently, PHA was not obligated by § 1437p(d) to submit such a plan. Nothing in the legislative history of § 1437p(d) suggests that Congress intended the amendment to impose a *greater* obligation upon the public housing agency than upon HUD, or to impose obligations upon the public housing agency that were not also preconditions of HUD's approval. *See id.* Rather, the history suggests that § 1437p(d)'s purpose was simply to change the result in *Edwards*, a purpose that has little, if any-

thing, to do with the present pre-amendment approval/post-amendment demolition problem. Without special help from the language of § 1437p(d), the language in § 1437p(b) suggests that the 1988 amendment does not apply to PHA's pre-approved plan.

Second, even were we to find the statutory language completely ambiguous, we should still have to accept appellants' interpretation in light of basic legal principles of statutory interpretation. For one thing, a canon of interpretation governing "grants" suggests that the amendment does not apply to the PHA's demolition in this case, a demolition approved before the amendment took effect. The Supreme Court has said that, because it is difficult, and sometimes unfair, to make a grantholder abide by new (post-grant) statutory obligations, a grantholder's obligations normally should be "evaluated by the law in effect *when the grants were made*," *Bennett v. New Jersey*, 470 U.S. 632, 640, 105 S.Ct. 1555, 1560, 84 L.Ed.2d 572 (1985) (emphasis added), not by the law "in effect at the time" the court "renders its decision," *Bradley v. School Board*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). Elaborating, the Court stated,

> "Absent a clear indication to the contrary in the relevant statutes or legislative history, changes in the substantive standards governing federal grant programs do not alter obligations and liabilities arising under earlier grants."

*Bennett*, 470 U.S. at 641, 105 S.Ct. at 1561. The PHA is literally a grantholder, for when HUD approved its demolition project it also provided funds (or, in the words of § 1437p, "furnished aid") to carry out that demolition. *Cf. Edwards*, 821 F.2d at 652 (opinion of Wald, C.J.) (noting that § 1437p is part of "a fairly typical federal grant-in-aid program" that conditions approval and funding for housing-related activities on compliance with certain statutory requirements). For purposes of this canon of construction, approval of a demolition project seems functionally equivalent to the award of a federal grant.

For another thing, the statutory language BASIC asks us to interpret is closely tied to the practical workings of a major federal administrative program and plays a minor, interstitial role within the statutory scheme creating that program. Under circumstances such as these, we must accord "considerable weight" to HUD's own interpretation of the statute, an interpretation that HUD not only offers on this appeal, but which it also has codified in a regulation specifically exempting from the reach of the 1988 amendments "units approved for deprogramming before February 5, 1988." *See* 24 C.F.R. § 970.2(g) (1989); *Chevron, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1983); *Power Reactor Dev. Co. v. International Union of Elec. Workers*, 367 U.S. 396, 408, 81 S.Ct. 1529, 1535, 6 L.Ed.2d 924 (1961) (contemporaneous statutory constructions are especially deserving of respect); *Mayburg v. HHS*, 740 F.2d 100, 106 (1st Cir.1984). (As to the regulation's applicability here, see 24 C.F.R. § 990.102 (1989) (defining "unit approved for deprogramming"); HUD Handbook 7486.1 ¶ 1–3.h (1986); 49 Fed.Reg. 22663, 22663 (May 31, 1984) (proposed rule); *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Bowles v. Seminole Rock Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945) ("[A] court must necessarily look to the administrative construction of [a] regulation if the meaning of the words used is in doubt.").)

Third, HUD's interpretation of the statute is an extremely reasonable one, for applying the new statutory conditions to public housing agencies that received HUD approval before those new conditions took effect could create serious practical problems. A glance at § 1437p(b)(3) reveals that many of the new conditions (such as the requirement in paragraph "(B)(1)" that the Secretary find "project-based assistance" not "feasible") are not only detailed and complex but would require public housing agencies with approved demolition proposals to make a return trip to HUD. Some of these public housing agencies might, however, already have demolished portions of projects; others might be all set to begin demolition. Although some agencies might find it easy to stop and to prepare a complex housing-replacement plan, others might find it both difficult and costly to do so. It is difficult to believe Congress intended to apply the complex and detailed new housing-replacement requirement to all uncompleted demolitions without saying a word about such potential problems, yet we do not see how, if we adopt BASIC's reading of the statute, one could avoid those problems. *See Tillman v. Housing Auth.*, No. 88–0211 (W.D.Pa. Feb. 17, 1988) (order denying preliminary injunction) ("[I]t would be absurd and unreasonable to apply the requirements of [§ 1437p(b)(3)] to demolitions that have already been commenced in compliance with the old law.").

We recognize, as BASIC points out, that Congressman Henry Gonzalez, a sponsor of the 1988 amendments, told HUD that Congress intended those amendments to "apply to those situations" in which "a public housing authority has previously secured HUD approval for demolition...." *See* Letter from Representative Henry B. Gonzalez to Samuel R. Pierce, Jr., Secretary of HUD (May 4, 1988). He added that "nothing in the statute provides a waiver of these requirements for projects that received approval prior to [the effective date of the 1988 amendment] but have not yet been demolished." *Id.* This statement, however, was written after the 1988 amendment became law. It simply is not sufficient, in our view, to overcome the linguistic, the practical, the administrative, and the grant-related interpretive concerns that we have previously mentioned. *Cf. American Hosp. Ass'n v. NLRB*, 899 F.2d 651 (7th Cir.1990) (discussing limited value of post-enactment legislative statements). Consequently, we are not persuaded by that letter nor by the single district court case that has held to the contrary, *see Walker v. HUD*, 734 F.Supp. 1289, *appeal docketed*, No. 89–1914 (5th Cir.1989).

## B. Alternative legal bases

█ Even though the 1988 amendment to 42 U.S.C. § 1437p cannot, on its own,

provide legal support for the district court's "time schedule" order, alternative grounds may well do so. For one thing, the *unamended* statute prohibited HUD from approving demolition unless,

> all tenants to be displaced as a result of the demolition ... are relocated to other decent, safe, sanitary, and affordable housing....

42 U.S.C. § 1437p(b)(2). The record strongly suggests that HUD would not (and perhaps legally could not) have found that this "relocation" condition was satisfied without PHA's plan to build new housing according to a time schedule roughly approximating the schedule that PHA submitted along with its demolition application.

For example, when PHA initially applied for permission to demolish the project towers in June 1987, it told HUD that,

> unless units proposed for demolition are replaced, the [PHA] would have relocation problems during the reconstruction of the remainder of the project.

In August 1987, HUD's own Providence office manager told HUD that,

> Clearly, the [relocation] requirements of the [unamended statute] ... cannot be met unless replacement housing funds are made available.

In January 1988, as part of its demolition application, PHA submitted to HUD a "Time Table for Demolition and Replacement Housing" which indicated that "construction of replacement housing" would begin in October 1988 and would finish a year later, seven months *before* demolition of the towers. When it approved the project on February 4, 1988, HUD expressly referred to "the replacement of units with 184 new public housing units and 120 vouchers."

As appellants point out, PHA made various revisions in the schedules and a HUD regional office director wrote, "time schedules for demolition, replacement housing, and modernization activities will be revised." But there is no indication that any such revisions foresaw significant delays. To the contrary, the HUD regional office director made clear that she thought sched-ule revision meant speeding up, not slowing down, the construction schedule.

Given this type of record evidence, the district court may have believed (1) that demolition could lawfully proceed only if PHA and HUD could show the "relocation" requirement satisfied, and (2) that PHA and HUD could make such a showing only if housing replacement proceeded along a time schedule that roughly resembled the schedule initially submitted. Believing this, the district court might have denied BASIC's motion for a preliminary injunction against the demolition *on condition that* the PHA replace the demolished housing according to a schedule no more stringent (in fact, considerably less stringent) than the time schedule PHA had itself proposed. *Cf. Robbins v. Reagan*, 780 F.2d 37 (D.C.Cir.1985) (per curiam) (district court properly dismissed challenge to lawfulness of agency action while "incorporat[ing] the agency's chosen course of action" into its final order). Moreover, had appellants asked for rehearing below, and made to the district court the legal argument they make here, the district court might well have shifted its legal ground and made the condition explicit before permitting the demolition to proceed. Given the record, the general tenor of the district court's opinion, and a district court's legal authority to impose appropriate conditions upon a grant or denial of a request for preliminary injunction, *cf. Weinberger v. Romero–Barcelo*, 456 U.S. 305, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982), this argument, which BASIC advances, is a strong one.

For another thing, BASIC told the district court that demolition of the towers, without adequate replacement housing, would violate other federal statutes, such as the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*, because, without that replacement housing, the demolition would adversely and disproportionately affect racial minorities. The district court refused to enjoin demolition on this basis, in part, it said, because "the demolition is to be compensated for by the construction of replacement housing ... in appropriate areas...." 721 F.Supp. at

1517. The court added that PHA should not demolish the towers unless it built replacement housing, for the "citizens of Providence are entitled to equate the demolition of the high-rises with the PHA's promise that it can and will build the 240 units of replacement housing." *Id.* Again, in evaluating the merits of these alternative statutory arguments, the court may have viewed the "time schedule" order as a necessary condition justifying its refusal to enjoin the demolition. *See Spring Mills, Inc. v. Ultracashmere House, Ltd.*, 724 F.2d 352, 355 (2d Cir.1983) (district court's discretion to fashion reasonable injunctive remedies is wide).

Finally, BASIC argues that, even if the court did not make its "time schedule" order a condition of the denial of preliminary injunctive relief, BASIC has a legal right to enforce the "time schedule" promise, either (1) because it has a legal right directly to enforce the statute's "relocation" requirement, *cf. Edwards*, 821 F.2d at 658 n. 7, 660 & n. 12 (opinion of Wald, C.J.); *id.* at 666 (Will, J., dissenting), or (2) because it has a legal right, as beneficiary of a critically important promise that PHA made to HUD, to hold the PHA to that promise.

By setting forth these arguments, we do not now hold that they provide sufficient legal support for the court's "time schedule" order. Rather, we intend only to show that, in the context of the record before us, these arguments (or at least some of them) are highly plausible. The fact is that the district court has not had an opportunity to consider these arguments, and the parties have not fully briefed all of them here. Because many of these arguments may turn on the district court's view of the case and its reasons for denying the preliminary injunction, we think it is important for the district court to consider them before we do.

We also note that PHA, at oral argument, told us that construction is in progress and may well be complete by June 1991, the deadline contained in the district court's order. That being so, and HUD (through this opinion) having achieved its objective of clarifying legal precedent, the parties may find that they no longer disagree about the order, particularly since PHA remains free to seek modification should unforeseen construction difficulties occur.

Regardless, we find BASIC's arguments sufficiently compelling to warrant leaving the injunctive order in place provisionally. The district court should reconsider the legal basis for its order if appellants request it to do so. BASIC may respond by presenting to the district court the arguments it has outlined here (and additional arguments).

*So ordered.*

## STATUTORY APPENDIX

§ 1437p. Demolition and disposition of public housing

(a) Obsolescence; best-interests transfers; use of proceeds

The Secretary may not approve an application by a public housing agency for permission, with or without financial assistance under this chapter, to demolish or dispose of a public housing project or a portion of a public housing project unless the Secretary has determined that—

(1) in the case of an application proposing demolition of a public housing project or a portion of a public housing project, the project or portion of the project is obsolete as to physical condition, location, or other factors, making it unusable for housing purposes, and no reasonable program of modifications is feasible to return the project or portion of the project to useful life; or in the case of an application proposing the demolition of only a portion of a project, the demolition will help to assure the useful life of the remaining portion of the project; or

(2) in the case of an application proposing disposition of real property of a public housing agency by sale or other transfer—

(A)(i) the property's retention is not in the best interests of the tenants or the public housing agency because developmental changes in the area sur-

rounding the project adversely affect the health or safety of the tenants or the feasible operation of the project by the public housing agency, because disposition allows the acquisition, development, or rehabilitation of other properties which will be more efficiently or effectively operated as lower income housing projects and which will preserve the total amount of lower income housing stock available in the community, or because of other factors which the Secretary determines are consistent with the best interests of the tenants and public housing agency and which are not inconsistent with other provisions of this chapter; and

(ii) for property other than dwelling units, the property is excess to the needs of a project or the disposition is incidental to, or does not interfere with, continued operation of a project; and

(B) the net proceeds of the disposition will be used for (i) the payment of development cost for the project and for the retirement of outstanding obligations issued to finance original development or modernization of the project, and (ii) to the extent that any proceeds remain after the application of proceeds in accordance with clause (i), the provision of housing assistance for lower income families through such measures as modernization of lower income housing, or the acquisition, development, or rehabilitation of other properties to operate as lower income housing.

(b) Consultation with tenants and tenant councils; relocation assistance; replacement housing plan

The Secretary may not approve an application or furnish assistance under this section or under this chapter unless—

(1) the application from the public housing agency has been developed in consultation with tenants and tenant councils, if any, who will be affected by the demolition or disposition and contains a certification by appropriate local government officials that the proposed activity is consistent with the applicable housing assistance plan;

(2) all tenants to be displaced as a result of the demolition or disposition will be given assistance by the public housing agency and are relocated to other decent, safe, sanitary, and affordable housing, which is, to the maximum extent practicable, housing of their choice, including housing assisted under section 1437f of this title; and

(3) the public housing agency has developed a plan for the provision of an additional decent, safe, sanitary, and affordable dwelling unit for each public housing dwelling unit to be demolished or disposed under such application, which plan—

(A) provides for the provision of such additional dwelling units through—

(i) the acquisition or development of additional public housing dwelling units;

(ii) the use of 15–year project-based assistance under section 1437f of this title;

(iii) the use of not less than 15–year project-based assistance under other Federal programs;

(iv) the acquisition or development of dwelling units assisted under a State or local government program that provides for project-based assistance comparable in terms of eligibility, contribution to rent, and length of assistance contract (not less than 15 years) to assistance under section 1437f(b)(1) of this title;

(v) the use of 15–year tenant-based assistance under section 1437f of this title (excluding vouchers under section 1437f(o) of this title; or

(vi) any combination of such methods;

(B) if it provides for the use of tenant-based assistance under section 1437f of this title, may be approved—

(i) only after a finding by the Secretary that replacement with project-

based assistance is not feasible, and the supply of private rental housing actually available to those who would receive such assistance under the plan is sufficient for the total number of certificates and vouchers available in the community after implementation of the plan and that such supply is likely to remain available for the full 15–year term of the assistance; and

(ii) only if such finding is based on objective information, which shall include rates of participation by landlords in the section 1437f of this title program, size, conditions and rent levels of available rental housing as compared to section 1437f of this title standards, the supply of vacant existing housing meeting the section 1437f of this title quality standards with rents at or below the fair market rent or the likelihood of adjusting the fair market rent, the number of eligible families waiting for public housing or housing assistance under section 1437f of this title and the extent of discrimination against the types of individuals or families to be served by the assistance;

(C) is approved by the unit of general local government in which the project is located;

(D) includes a schedule for completing the plan within a period consistent with the size of the proposed demolition or disposition, except that the schedule shall in no event exceed 6 years;

(E) includes a method of ensuring that the same number of individuals and families will be provided housing;

(F) provides for the payment of the relocation expenses of each tenant to be displaced and ensures that the rent paid by the tenant following relocation will not exceed the amount permitted under this chapter; and

(G) prevents the taking of any action to demolish or dispose of any unit until the tenant of the unit is relocated to decent, safe, sanitary, and affordable housing that is, to the extent practicable, of the tenant's choice.

(c) Financial assistance; annual contributions; funding of replacement housing plan

(1) Notwithstanding any other provision of law, the Secretary is authorized to make available financial assistance for applications approved under this section using available contributions authorized under section 1437c of this title.

(2) The Secretary shall, upon approving a plan under subsection (b)(3) of this section, agree to commit (subject to the availability of future appropriations) the funds necessary to carry out the plan over the approved schedule of the plan.

(3) The Secretary shall, in allocating assistance for the acquisition or development of public housing or for moderate rehabilitation under section 1437f(e)(2) of this title, give consideration to housing that replaces demolished public housing units in accordance with a plan under subsection (b)(3) of this section.

(d) Conditions for agency action

A public housing agency shall not take any action to demolish or dispose of a public housing project or a portion of a public housing project without obtaining the approval of the Secretary and satisfying the conditions specified in subsections (a) and (b) of this section.