**PROJECT B.A.S.I.C., Plaintiff,**

v.

**Jack F. KEMP, Secretary, U.S. Department of Housing and Urban Development, et al., Defendants.**

**PHOENIX-GRIFFIN GROUP II LTD., et al., Plaintiffs,**

v.

**Jack F. KEMP, in his capacity as Secretary of the U.S. Department of Housing and Urban Development, et al., Defendants.**

**Civ. A. Nos. 89–0248P, 91–0188P.**

United States District Court, D. Rhode Island.

June 14, 1991.

---

Steven Fischbach, Judith Kaye, RI Legal Services, Providence, R.I., for plaintiff Project B.A.S.I.C.

Everett Sammartino, Asst. U.S. Atty., Providence, R.I., Peter Kimm, Jr., David J.P. Gross, U.S. Dept. of Justice, Civ. Div., Washington, D.C., for defendants HUD and Jack F. Kemp.

Stephen J. Reid, Jr., Blish & Cavanagh, Providence, R.I., for defendants Stephen O'Rourke and Housing Authority for City of Providence.

Kevin McHugh, Office of City Sol., City of Providence, Providence, R.I., for defendant City of Providence.

Robert J. Cosentino, Providence, R.I., for defendant Providence Community Action Program (PRO-CAP).

Robert B. Mann, Mann & Mitchell, Providence, R.I., for plaintiffs Phoenix Griffin Group II Ltd., LTG Const. Co. and Lloyd T. Griffin.

## MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

It is with deep regret and great concern that I revisit this case. *Project B.A.S.I.C.* began in April 1989 and, in the words of the Providence Housing Authority ("PHA"), has involved a "near-epic saga of litigation." On April 12, 1991, the parties entered into a settlement stipulation. It was my hope at that time the project would run smoothly without any further intervention by this Court. The possibility of my intervention, however, was left open by the terms of the settlement which left in force my decree of July 17, 1989. *Project B.A.S.I.C. v. Kemp*, 721 F.Supp. 1501 (D.R.I.1989). I return to this case now because of a related case, *Phoenix–Griffin Group II Ltd. v. Kemp*, C.A. No. 91–0188P.

## BACKGROUND

Briefly, this case involves low income housing. A number of units in the City of Providence were demolished and now the PHA and Department of Housing and Ur-ban Development ("HUD") are under an obligation to replace those 240 units of housing. In my original order, I set a deadline for the completion of the replacement housing; that deadline is June 17, 1991. *Project B.A.S.I.C.*, 721 F.Supp. at 1515.

Phoenix–Griffin Group II Ltd. ("Phoenix") is one of the contractors selected by the PHA to build ninety-two of the first 131 replacement units of scattered site housing. Phoenix has already completed and turned over to PHA ownership fifty-two units. The remaining forty units are in varying stages of construction, although most are near completion.

When Phoenix started work on the project, it asked PHA whether it would have to pay Davis–Bacon Act wages for its employees at its off-site prefabrication plant on Veazie Street. *See* 40 U.S.C. § 276a *et seq.* After consulting with the regional HUD office, PHA told Phoenix that it would not have to pay those higher wages. In March 1991, PHA was informed by HUD that the United States Department of Labor was conducting an investigation of Phoenix's operations and that PHA, therefore, had to withhold $500,000 from the project at least until completion of the investigation. This action by the Labor Department and HUD came as a surprise not only to the PHA, but also to Phoenix.

On April 15, 1991, Phoenix filed suit to enjoin the withholding of the $500,000. Although nominally a defendant in that action, PHA supports Phoenix's contention that it was given advice by HUD that was, evidently, contrary to the Labor Department's interpretation of the Davis–Bacon Act. Phoenix alleges that without that $500,000 it cannot continue construction; its line of credit cannot withstand that loss. As a result, work will stop and those in dire need of the replacement housing, the poor and homeless of Providence, will not have decent housing.

This case is a classic example of two arms of the federal government battling over their respective domains. The battle has created a nightmare not only for this

Court, but for those who have labored so long to provide new low income housing and for those who await it. Both agencies make respectable arguments with regard to the regulations within their own realms, but they refuse to look past those regulations. This Court has overseen the Project B.A.S.I.C. litigation from the beginning and my paramount concern has always been to provide sorely needed housing as expeditiously as possible. It was with these needs in mind that I instructed the parties to *Phoenix–Griffin*, most of whom are also parties to *Project B.A.S.I.C.*, to brief for me the issues surrounding the possible issuance of a contempt decree based on my ordered June 17, 1991 deadline for the completion of housing. For the following reasons, I have decided that I will hold HUD in contempt, once the deadline passes, if it continues to impede the completion of the project.

DISCUSSION

■ It is beyond dispute that this Court has the inherent equitable power to enforce its July 17, 1989 order with civil contempt and to impose fines for non-compliance. *See Morales–Feliciano v. Parole Board of Puerto Rico*, 887 F.2d 1, 4–6 (1st Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1511, 108 L.Ed.2d 646 (1990). Clearly, impossibility is a defense to contempt. *Oriel v. Russell*, 278 U.S. 358, 365–66, 49 S.Ct. 173, 175, 73 L.Ed. 419 (1929). There need not be wilful defiance to find a party in contempt, nor will a showing of substantial compliance with a court's order excuse a party. *Morales*, 887 F.2d at 4–5. "Good faith alone is not a defense to civil contempt.... [I]mpossibility would be a defense to contempt, ... [but] the test of impossibility may be particularly strict [where] the needs of [the plaintiffs] are urgent." *Id.* at 5 (citations omitted).

■ The PHA has demonstrated to this Court that it will be truly impossible for it to comply with my order. As witnessed by this Court, the PHA has made a diligent effort to comply with the order. The matter, however, has been taken out of its hands by the federal government. PHA derives all of its funding for this project

from HUD, and PHA is now under a direct order from HUD to withhold the monies on the basis of the Labor Department's instructions. There is nothing within PHA's power that can change this scenario. PHA, therefore, can assert the defense of impossibility.

■ HUD, however, "has not shown that causes beyond its control have made it overwhelmingly difficult or anywhere near impossible" to move this project closer to completion. *See id.* HUD has it within its power and discretion to issue a "change-order" which would authorize additional funding to cover the Labor Department lien and allow Phoenix to complete the remaining forty units. Although I specifically instructed HUD to point out to this Court any impediment to its issuance of such a change-order, HUD could point to no such provision and instead stressed its "full discretionary power" over expenditures.

Rather than focusing on an impossibility defense, HUD has chosen to argue primarily that my original order was not directed against it. Although HUD was clearly a defendant in *Project B.A.S.I.C.*, my order stated:

IT IS HEREBY ORDERED that the PHA proceed as soon as possible to begin construction of the 240 public housing units, funded by HUD.... The PHA is ordered to complete construction of all 240 units of replacement housing within 23 months of the date of this Opinion. 721 F.Supp. at 1515.

Before addressing this defense, I must first state that my clear intention at the time of the order was to bind HUD as well as the PHA. Without HUD's continued funding and approval, the PHA could not go forward with the project.

The cases cited by HUD in support of the proposition that a contempt decree cannot be directed against it all speak in generalities and none hold that a *party* is not bound by a court's order. *See e.g., Spallone v. U.S.*, 493 U.S. 265, 110 S.Ct. 625, 631, 107 L.Ed.2d 644 (1990) (contempt not proper against non-party legislator). There is no doubt that HUD was a party—it was

a named defendant in *Project B.A.S.I.C.* Moreover, the policies that counsel against holding a non-party in contempt do not apply to HUD. "The central reason that one who is not a party to the action in which the injunction was issued cannot be bound by it is that he has not had his day in court with *respect to the validity of the injunction." G & C Merriam Co. v. Webster Dictionary Co.,* 639 F.2d 29, 37 (1st Cir.1980) (emphasis in original).

HUD has most certainly had its day in court. It has been a defendant in *Project B.A.S.I.C.* from the inception of the case. HUD has vigorously defended its position in the action; in fact, it was often HUD who prepared briefs, with PHA simply joining. HUD appealed the order in question to the First Circuit Court of Appeals, something it certainly would not have done had it thought the order did not apply to the agency.[1] Finally, HUD actively participated in negotiations and signed onto the settlement stipulation in *Project B.A.S.I.C.* If HUD had ever truly doubted whether it was bound by my order, it could have easily petitioned this Court for a clarification. *See Regal Knitwear Co. v. NLRB,* 324 U.S. 9, 15, 65 S.Ct. 478, 481, 89 L.Ed. 661 (1945); *Moore's Federal Practice,* ¶ 65.13 (2d Ed. 1990).

Moreover, there *are* situations in which a court can direct a contempt order against a non-party. *See e.g., New York State Nat'l Organization for Women v. Terry,* 732 F.Supp. 388, 399–400 (S.D.N.Y.1990). These cases are based on the provisions of Fed.R.Civ.P. 65(d) which allow an injunction to bind "those persons in active concert or participation" with parties. This rule also covers those who are "legally identified" with the named parties. *See G & C Merriam,* 639 F.2d at 35. For a fully involved participant such as HUD to essentially claim immunity strains logic when even *non* -parties can, in fact, be bound by an order they had no opportunity to attack.

HUD has argued that it would be contrary to public policy to hold it in contempt. HUD asserts that by providing additional monies, this Court would be rewarding Phoenix for its violation of prevailing wage laws. HUD further contends that such court action would encourage other contractors involved in public housing to breach wage laws with the expectation that HUD will make up the difference. HUD's argument, however, is flawed. First of all, it is the poor people of Providence awaiting housing who are the primary beneficiaries of my actions, not Phoenix. Secondly, Phoenix's situation is unique. Phoenix, constructing housing ordered built by this Court, relied upon HUD's assurance (through the PHA) that the wage law did not apply to the Veazie Street site. This situation is not apt to be easily replicated.

Based on the briefs submitted and the reasons that I have set out above, I am prepared to hold HUD in civil contempt without further hearing. *See Morales,* 887 F.2d at 6–7 (briefs alone may provide adequate opportunity to be heard). This Court is convinced that the July 17, 1989 order binds HUD and that HUD cannot prove the defense of impossibility. HUD has the power and discretion to grant a change-order which would allow the project to continue. Until such time as HUD has done *everything* within its power to move the project toward completion, it cannot convince this Court that it is acting in compliance with my order.

If the June 17, 1991 deadline passes and HUD has not issued a change-order or otherwise ensured the swift completion of the forty replacement units being constructed by Phoenix, I will find them in civil contempt. In order to coerce compliance with my order, I will initially fine the agency $250,000. I will continue to fine it at a rate of $2,000 a day until HUD removes all barriers to completion within its control. The fine will be capped at $500,000 and any monies collected by this Court shall be ap-

---

1. HUD relies on *Project B.A.S.I.C. v. O'Rourke,* 907 F.2d 1242 (1st Cir.1990) for its argument that the order was directed solely at PHA. There had been a challenge regarding HUD's standing to appeal on the basis that HUD was not a party to the order. The First Circuit, however, found it unnecessary to reach this issue as PHA clearly had standing. *Id.* at 1244.

plied toward completion of the housing.[2] Because the deadline is so near, I will stay execution of this order until June 27, 1991. I am granting HUD this additional time to allow it to take whatever steps may be necessary to comply with my Order. On June 27, 1991, if HUD has not complied, the fine will be imposed automatically without further action of this Court.

I have carefully evaluated this fine in terms of "the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of [the] ... sanction in bringing about the result desired." *G & C Merriam*, 639 F.2d at 41. The harm of HUD's contumacy is truly beyond calculation. Not only will those families who have been awaiting public housing for years be denied that housing for an indeterminable period of time, but the housing that is nearly complete will lay fallow and deteriorate while HUD and the Labor Department do battle. The sanction I am imposing may break the stalemate. If not, it will provide the funding necessary to get Project B.A.S.I.C. back on its feet.

SO ORDERED.

---

**2.** When "contempt sanction [are] intended to coerce future compliance ... a court has wide discretion...." *G & C Merriam*, 639 F.2d at 41.