[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter is before the court on a Motion for Contempt filed by the plaintiff. In its Motion, the plaintiff alleges that the defendant, Town of Orange Planning and Zoning Commission is in violation of orders of the court entered at an earlier date. The underlying action in this matter is an affordable housing appeal brought to the Superior Court pursuant to General Statutes § 8-30g. On August, 1999 the court sustained the appeal of the plaintiff and ordered the defendant to approve the application. The court orders remanded the matter to the defendant CT Page 15059 Commission "with direction that the applications pertinent to the modified proposal be granted, conditioned upon Avalon's compliance with the affordable housing mandates; further, the commission may, as a requirement of approval, impose reasonable and necessary conditions, not inconsistent with this decision, for snow removal, traffic controls and local road improvements." The commission approved the application and attached certain conditions. The plaintiff filed the subject Motion for Contempt alleging that six of the conditions adopted by the commission when approving the application are neither reasonable nor necessitated and are inconsistent with the court's order. Further allegations of their inappropriateness are also alleged and will be referenced in the context of this decision. By way of relief, the plaintiff seeks an order finding the defendant in contempt of court, an order requiring the commission to rescind the six offensive conditions, an order assessing a fine of the defendant on a per diem basis until compliance with the relief sought, and attorney fees and costs. The defendant has objected to the plaintiff's motion for contempt. Both parties have filed memoranda of law in support of their respective positions. For the reasons stated hereinafter, the court does not find the defendant in contempt; however, certain remedial relief is ordered.
 I. Factual background
The plaintiff is the owner of a 9.58 acre parcel of undeveloped land located at the corner of Prindle Hill Road and Edison Road in the Town of Orange, Connecticut. The plaintiff was denied an application for the development of a 168 unit residential project with 25% of the units dedicated to affordable housing. The plaintiff appealed this denial. Coincident with this denial there was an appeal by the plaintiff from a decision of the Town of Orange Inland Wetlands Agency denying a permit for the project. That appeal was sustained. Post court activities took place before that Commission and ultimately, the plaintiff received its wetlands approval for a plan that was then presented to this defendant commission for proceedings consistent with the court orders.
The commission, after a hearing process, approved the plaintiff's application with numerous conditions attached. The plaintiff has brought this motion for contempt claiming that the attachment of certain conditions constitutes contempt of the court's orders contained in the memorandum of decision sustaining the appeal from the original denial. The court held a hearing on the motion for contempt and counsel have extensively briefed the issues. At its commencement, the plaintiff also filed a Motion for Supplemental Judgement. Memoranda regarding that motion have been filed as well.
Sixteen conditions were attached to the approval. The following were CT Page 15060 complained of in the motion for contempt:
"2. Prior to the issuance of a Certificate of Zoning Compliance, the Applicant shall make the following improvements to Prindle Hill Road and Indian River Road, such improvements to be in accordance with the requirements of the Town Engineer and Police Chief:
a. Widen Indian River Road to create a fourteen foot right turn lane from Indian River Road onto Prindle Hill Road.
b. To the extent of available right-of-way as determined by the town engineer, the applicant shall widen Prindle Hill Road onto Indian River Road.
c. Reconstruct Prindle Hill Road to a uniform forty-one foot width (fifteen feet northwest bound and twenty-six feet southeast bound) from the proposed beginning of the deceleration lane northwesterly of the northwesterly curbcut of Prindle Hill Road to the point of commencement of the remerger of the proposed acceleration lane toward the southeasterly corner of the property.
"5. Prior to the issuance of a Certificate of Approval of Special Permit and/or Building Permit, the Applicant shall grant to the Town a permanent and unconditional easement for all highway purposes including snow shelf over that portion of the property on which road improvements to Prindle Hill Road are to be located which are not within the present public right of way and over an additional ten feet from the edge of proposed pavement.
"8. Prior to the issuance of a Certificate of Approval of Special Permit and/or Building Permit, the Applicant shall submit to the Zoning Enforcement Officer notice of approval of the Inland Wetlands and Watercourse Commission for the filling of wetlands necessary for the required improvements to Prindle Hill Road.
"9. Prior to the issuance of a Certificate of Zoning Compliance, the Applicant shall install a traffic signal at the intersection of Edison Road and Prindle Hill Road in accordance with the requirements of the town engineer and the police chief.
"10. Prior to the issuance of a Certificate of Approval of Special Permit and/or Building Permit, the Applicant is required to deposit with the Town a sum as determined by the town engineer which is a percentage of the estimated cost for the extension of Edison Road from its existing terminus to Marsh Hill Road equal to one-half of the fraction, the numerator of which is the Applicant's frontage on Edison Road and the CT Page 15061 denominator of which is the total length of Edison Road as extended to be part of a sinking fund to be used toward the cost of the extension of Edison Road from its current terminus to marsh Hill Road. Said funds shall be deposited pursuant to an agreement between the Town and the Applicant, acceptable to the Town Attorney, which shall provide that if construction had not been commenced within (7) years of the date of this approval that the funds allocated to the improvement not commenced shall be returned to the Applicant.
"11. Prior to the issuance of a Certificate of Zoning Compliance, the Applicant shall resignalize the traffic light at the intersection of Prindle Hill Road and Indian River Road in accordance with the requirements of the Town Engineer and Police Chief."
The plaintiff argues that the defendant has no authority to attach conditions to the Special Permit approval because the commission had suspended its regulations which permitted Planned Residential Developments. However, as noted in the original decision on this matter, the plaintiff's application was filed before that suspension occurred. Therefore, those regulations as they existed at the time of filing are operative here.
 II. Standard Burden of proof
At the outset, this conflict cannot be resolved until the court determines the proper standard for the burden of proof which reposes with the plaintiff as to these proceedings. The law in Connecticut is not settled as to the burden of proof applicable to a civil contempt proceeding. "It is within the powers of this court, in a case of civil contempt which involves conduct directed against some right of the opposing party, to review the claim that the lower court erred in refusing to find a party in contempt. Since the conduct of the defendant in the present case which allegedly constituted contempt is claimed to have violated some civil right of the plaintiff which he seeks to have protected by the imposition of punishment that is remedial or coercive rather than purely punitive in nature, the contempt sought is classified as civil . . . ." Potter v. Board of Education, 174 Conn. 195, 196-7
(1978). "[W]e are compelled to affirm the established principle of law that a finding of indirect civil contempt must be established by "sufficient proof' that is premised upon competent evidence presented to the trial court in accordance with the rules of procedure as in ordinary cases"." Cologne v. Westfarms Associates, 197 Conn. 141, 155 (1985).[1]
Recognizing the normal burden of proof in civil proceedings is "a fair preponderance of the evidence, ' many trial courts have gone on to apply CT Page 15062 that standard to civil contempt proceedings. eg Statewide GrievanceCommittee v. Zadora, 1999 WL 989455, p. 1 (1999); Brickley v. WasteManagement of Connecticut, Inc., 1998 WL 7099, p. 3-4 (1998); City ofStamford v. Malagasi, 1996 WL 165596, p. 1 (1996).
The issue of the propriety of the application of the fair preponderance burden has not been squarely ruled upon by our state courts. In his dissent in the matter of Issler v. Issler, 50 Conn. App. 58 (1998),rev'd on other grounds at 250 Conn. 226 (1999), Judge Daly argued that the proper standard to apply to a civil contempt proceeding is the clear and convincing evidence standard. Looking to the federal courts which applies this higher, intermediate standard, Judge Daly wrote, `A standard of proof allocates the risk of error between the litigants and indicates the relative importance of the ultimate decision. Addington v. Texas,
[supra, 441 U.S. 423]. For example, the proof beyond a reasonable doubt standard implies that the party on whom that burden is imposed should bear almost the entire risk of error. Id. At 423-34, 99 S.Ct. at 1808. In contrast, the preponderance of the evidence standard indicates that the litigants should share equally the risk of error, id, at 423, 99 S.Ct. At 1808, because the interests at stake have roughly equal societal importance. Santosky v. Kramer, 455 U.S. 745, 787, 102 S.Ct. 1388,1411-12, 71 L.Ed.2d 599 (1982) (Rehnquist, J. dissenting). Proof by clear and convincing evidence is an intermediate standard generally used in civil cases involving allegations of fraud or some other quasi-criminal wrongdoing, or when particularly important individual rights are involved. Addington, 441 U.S. at 424, 99 S.Ct. At 1808. United States v.Schell, 692 F.2d 672, 676 (10th Cir. 1982) . . . . "(Internal quotation marks omitted. ) Cookson v. Cookson, 201 Conn. 229, 514 A.2d 323 (1986).
"In Stringfellow v. Haines, 309 F.2d 910, 912 (2d cir. 1962), the Second Circuit Court of Appeals relied on the reasoning of Judge Hutcheson in Coca-Cola Co. v. Feulner, 7 F. Sup. 364, 365 (S.D. Texas, 1934), to hold that a finding of civil contempt must be proven by clear and convincing evidence. "[Civil contempt] is for the benefit of the complainant; the punishment meted out in it is remedial. Gompers v.Buck's Stove Range Co., 221 U.S. 431, 31 S.Ct. 492, 55 L.Ed. 797
[1911]. A proceeding for criminal contempt, on the other hand, is to vindicate the authority of the court and the sentence is punitive, [Id.] In proceedings for criminal contempt, the defendant is presumed to be innocent and must be found guilty, and no contempt order will issue unless the defendant is proven guilty beyond a reasonable doubt. Id. In those for civil contempt, there is no presumption, and proof of the contempt need not be beyond a reasonable doubt. Oriel v. Russell,278 U.S. 358, 49 S.Ct. 173, 73 L.Ed. 419. While this is so, a bare preponderance of the evidence will not suffice to hold one even in civil contempt. Proof of the violation must be clear and convincing." Coca-ColaCT Page 15063Co. v. Feulner, supra, 7 F. Sup. That principle has been repeatedly affirmed by the Court of Appeal for the Second Circuit." Issler,
dissenting, at 75-76.
Our Supreme Court has not revisited the utilization of the fair preponderance of the evidence burden in light of the trend in federal court. Therefore, the trial court continues to utilize that standard in civil contempt proceedings such as this. When the conduct of the party at issue would satisfy' either the fair preponderance or the clear and convincing standard, no issue arises. In this matter the court finds that the plaintiff has not satisfied the fair preponderance of the evidence standard as to each of the elements of a contempt finding.
The Conduct
The commission has imposed numerous conditions of approval on the plaintiff that are not in compliance with the orders of the court entered as a part of the judgment. This court sustained Avalon's appeal and remanded the matter with direction to the commission to approve the modified proposal, conditioned upon Avalon's continued compliance with the affordable housing statutory mandates, and, further ordered that "the commission may, as a requirement of approval, impose reasonable and necessary conditions, not inconsistent with this decision, for snow removal, traffic controls, and local road improvements."
However, the plaintiff incorrectly argues that the commission could not revisit those snow removal, traffic control and local road improvement issues that partially formed the basis for the commission's original denial of the application. This court, at that time, had particularly in regard to these three areas pointed out that the commission could have considered the issues to formulate appropriate conditions for approval, but instead, had utilized them as a basis for denial. In fact, the regulations in effect at the time of the application, had provided that the applicant as a condition of approval could be required to contribute to local road improvements. This court's decision, essentially allowed the commission as the local board charged with the responsibilities of a planning and zoning commission, and therefore best suited to address these issues, to consider what specific conditions would be necessary and reasonable to address the road, traffic and snow removal conditions raised at the original hearing by the commission itself. The reasonableness of their judgment is at the core of the issue in this motion for contempt and must be examined specifically regarding each challenged condition. "Conditions that are impossible to satisfy are patently unreasonable." Vauszauskas v. Zoning Board of Appeals,215 Conn. 58, 65, 574 A.2d 212 (1990). CT Page 15064
I. Widening of Prindle Hill Road and Indian River Road
The second condition of approval was objected to by the developer and a subject of the motion for contempt. The requirement is, "prior to the issuance of a Certificate of Zoning Compliance, the Applicant shall make the following improvements to Prindle Hill Road, such improvements to be in accordance with the requirements of the Town Engineer and Police Chief:
a. Widen Indian River Road to create a fourteen foot right turn lane from Indian River Road onto Prindle Hill Road.
b. To the extent of available right-of-way as determined by the town engineer, the applicant shall widen Prindle Hill Road to create a right turn lane up to fourteen feet from Prindle Hill Road onto Indian River Road.
The subject property runs along the length of Prindle Hill Road to Edison Road. Prindle Hill Road continues on to Indian River Road.
The road conditions sought to be improved by these conditions were one of the reasons that the commission had previously denied the application. Plaintiff argues that since those roadway concerns of the commission were ruled an inadequate basis for a denial of the plaintiff's affordable housing application, that they cannot constitute the basis for a condition of approval. Nothing in the law or the decision that remanded from this court even suggests such an interpretation.
Upon remand the project was reviewed by several officials and agencies within the Town of Orange. The Town of Orange Fire Marshal stated that the developer had met all site plan requirements of himself and the Fire Chief. The Fire Chief concurred with that in his own correspondence to the defendant commission. The Chief of Police, on behalf of the Orange Traffic Authority made a variety of recommendations, none of which included widening and creating the 14 foot turning lanes.
The Town Engineer wrote a memorandum to the defendant commission stating, in part, "The following improvements are required from the developer of subject site:
"4.a. Right turn lane (14') from Prindle Hill Road to Indian River Road
b. Right turn lane (14') from Indian River Road to Prindle Hill Road"
"The above are necessary to separate the traffic to be generated by this site from the existing traffic in the area and also to facilitate the CT Page 15065 mixed traffic through, in to and from the area and the site. Prindle Hill Road now carries traffic to and from the Bayer Plant and West Haven in general." Lieberman acknowledged in a subsequent memorandum that to create the right turn lane on to Indian River Road from Prindle Hill Road, a complete reconstruction of the roadway would be necessary. The recommendations of Lieberman were mirrored in recommendations made by the Safety Commission of Orange to the Commission. Lieberman is on the Safety Commission as is the Fire Marshal and the Police Chief, as well as four other individuals.
In regard to these recommended changes, the Commission promulgated conditions 2a through 2c as conditions of approval. This was done over the objections of the developer. Its position was best summarized in a letter from its traffic consultant, Bruce Hillson to the town engineer in which Hillson suggested this should not be a burden of Avalon Bay since it was his opinion that the traffic level of service issues were caused by other, already existing projects. He perceived that other developments that had been approved had raised the afternoon peak flow by 200 cars per hour at the intersection, and, the Avalon Bay community was only expected to add an additional 100 cars on top of that.[2]
It is the argument, therefore, of the plaintiff that these requirements are not reasonable and are not necessary. If they are necessary they go on to argue, the burden should not be placed upon the plaintiff since their expert has concluded that of the traffic increases at the afternoon peak flow, they are responsible for only one-third of that, and, that the Level of Service had already been lowered from LOS C to LOS D by the 1997 200 car traffic increase from other developments. Further it is argued that the resignalization that would be required by this work requires the approval of the State Traffic Commission, whose approval cannot be forecast. It is an invalid and, therefore, unreasonable provision argues plaintiff. Finally, the plaintiff argues that the condition 2b is an impossibility to fulfill, for plaintiff's expert has stated that there is not sufficient right of way available to construct the right turn lane from Prindle Hill Road westbound onto Indian River Road.
The defendant commission relying on the expert recommendations of its engineer and Safety Commission, concluded that these conditions were both reasonable and necessary to address traffic conditions affected by the plaintiff's project. Indeed, plaintiff's witness, at the hearing on this matter, stated that these are desirable goals for the roads, but they are costly and should not be the responsibility of the plaintiff. The costs of these projects were not placed before the court.
However, the defendant appeared to accept the real possibility that there was insufficient right of way to construct the right turn lane from CT Page 15066 Prindle Hill Road westbound onto Indian River Road, for the language of condition 2b states, "to the extent of available right-of-way as determined by the town engineer . . ." The town engineer had already reviewed the drawings of the plaintiff's experts Milone MacBroom and stated that, "It is strongly recommended that a surveyor provide us with exact rights-of-way and pavement lines so that we can be positive about the availability of land. Avalon should be required to do this. Regardless of the availability of Right-of-Way, the improvements are among the many needed for the safety of the existing and future traveling public. If additional land is required for the improvements, Avalon, like Beckenstein for the Christmas Tree Development, should be required to purchase it."
The commission was free to accept the recommendation of its expert, the town engineer and reject the opinion of the plaintiff's experts as to both the necessity for these conditions as well as the reasonableness of them. The commission relied on the opinions of its town engineer and Safety Commission. Such reliance, being appropriate cannot be the basis for a finding of contempt. The court also considers whether, in the absence of contempt, the conditions should be allowed to stand. Where expert opinion differs, the court will not disturb the decision of the commission in accepting one set of opinions and recommendations and rejecting the other.
However, the court must go on to look at the reasonableness of the requirements. It is unreasonable to require the road reconstruction provided for in 2b when the commission itself was aware that it lacked sufficient information to determine whether there was sufficient land to support the construction of the right turn lane. Understanding that the commission cannot attach an impossible condition to attain, it defers to the town engineer as the decision maker as to whether there is enough right-of-way. The town engineer however opined that there was sufficient right of way for this work with reference to the plans prepared by Milone and McBroom for Avalon (exhibit 9). However, those plans do not show the intersection at issue. That intersection is shown on the Care Matrix plans (exhibit 28). The testimony on the lack of sufficient right of way is not rebutted by anything credible; this approval should not be conditioned upon such an impossibility. While the court does not find that this unreasonable condition was wilfully imposed in violation of a court order, the interests of equity require the court to strike down this condition as a part of the approval.
II. Easement provision
The plaintiff objects to the unrestricted language of the condition for the plaintiff's grant of an easement that had been intended for snow CT Page 15067 shelf purposes. The requirement is for "a permanent and unconditional easement for all highway purposes including snow shelf over that portion of the property on which road improvements to Prindle Hill Road are to be located which are not within the present public right of way and over an additional ten feet from the edge of proposed pavement." During the course of the hearing, the commission witnesses, including the town attorney, acknowledged that the this easement was intended for snow shelf purposes. Only after discussion with the town engineer was the unconditional language drafted by the town attorney. The commission had not requested this language, only an easement for snow shelf purposes. The far reaching language of the unconditional easement for highway purposes has no basis in the record and is unreasonable in the overbreadth of its language.
III. Further wetlands approval (8) and widening of Prindle Hill Road (2c)
The commission, as a further condition of approval ordered the plaintiff to widen Prindle Hill Road to a uniform width of 41 feet at condition 2c. "Reconstruct Prindle Hill Road to a uniform forty-one foot width (fifteen feet northwest bound and twenty-six feet southeast bound) from the proposed beginning of the deceleration lane northwesterly of the northwesterly curbcut of Prindle Hill Road to the point of commencement of the remerger of the proposed acceleration lane toward the southeasterly corner of the property."
The necessity of widening Prindle Hill Road, as described, along the entire frontage of the site so that there is a continuous lane for deceleration and acceleration was the focus of conflicting opinion. The expert offered by the plaintiff opined that a traffic hazard would be created by making the widening continuous rather than tapering. The engineer of the town felt it would be safer to make the lane continuous. However, the court cannot find that this requirement is necessary for safety where previously in the record of the earlier proceedings (now a part of the record of these proceedings) the town engineer had agreed to tapered lanes rather than continuous widening.
The commission recognized that its requirement that Avalon Bay widen Prindle Hill Road along its length will require an activity that is regulated by the Inland Wetlands Commission of the Town of Orange. Therefore, it has created the condition that "[p]rior to the issuance of a Certificate of Approval of Special Permit and/or Building Permit, the Applicant shall submit to the Zoning Enforcement Officer notice of approval of the Inland Wetlands and Watercourse Commission for the filling of wetlands necessary for the required improvements to Prindle Hill Road." CT Page 15068
This provision would require the plaintiff to gain approval of an activity where such approval is by no means guaranteed. The plaintiff had already had a contested appeal with the wetlands commission over the denial of a permit for an activity which was far less intrusive of the very same wetlands than this contemplated filling of wetlands.[3] As a consequence it is a fair inference that any activity required by the defendant commission as a condition of approval which requires the filling of wetlands and is therefore dependent upon the approval of the wetlands commission, is invalid. The commission cannot condition its approval on the approval of another body where the result of success is not even probable.[4]
Therefore, within its equitable authority, the court finds condition 8 and condition 2c are void as unreasonable in that they require the plaintiff to seek further approvals from the wetlands commission which is highly unlikely.
IV. Traffic signal at Edison Road and Prindle Hill Road.
At condition 9 of the approval the commission required that, "Prior to the issuance of a Certificate of Zoning Compliance, the Applicant shall install a traffic signal at the intersection of Edison Road and Prindle Hill Road in accordance with the requirements of the town engineer and the police chief."
The installation of a traffic signal requires the approval of the State Traffic Commission after the submission of an application by the municipality itself through its traffic authority. The Town of Orange traffic authority, has not recommended this signalization, nor has it made application for it. There is no traffic study for such signalization demonstrating a need for the light. The request is not necessary for safety; the Town's witness generally stated more traffic lights are better with insufficient specificity as to the safety needs for a traffic light at this intersection. Further, it sets up a condition for approval that requires the approval of a commission which is not probable based upon the information in the record, and, the application procedure is not within the reach of the applicant, but rather in the hands of an outside agency, the town traffic authority. This is an unreasonable and unenforceable provision and is therefore void.
V. Fund contribution for extension of Edison Road
The subject property abuts Edison Road as well as Prindle Hill Road. Edison Road is currently a dead end, with the Pez factory abutting on the other side of the street. The road then dead ends. It is a condition of approval that prior to the issuance of the Special Permit, the plaintiff CT Page 15069 deposit "with the Town a sum as determined by the town engineer which is a percentage of the estimated cost for the extension of Edison Road from its existing terminus to Marsh Hill Road equal to one-half of the fraction, the numerator of which is the Applicant's frontage on Edison Road and the denominator of which is the total length of Edison Road as extended to be a part of a sinking fund to be used toward the cost of the extension of Edison Road from its current terminus to Marsh Hill Road." It further provides that the funds are to be held by the Town for the road construction, if it occurs, and returned to the Applicant if the construction has not commenced within seven years.
There is nothing within the context of this provision itself that can suggest that it is anything more than a condition in furtherance of the Town Plan of Development; it, by its own terms, is neither necessitated by this project or for the safety of the area as a result of this project. Further, while a formula is included, it does not have an ascertainable basis within it to conclude as to its reasonableness. There is neither a cost established, nor an ascertainable number for the denominator. (If the frontage for the whole theoretical road extension were available, it is assumed that the commission would have established it.) The funds are irrevocably surrendered to the town if construction commences with no provisions for the completion of construction or return of funds. This entire condition is unreasonable. The court deems it void.
VI. Resignalization of the traffic light at Prindle Hill Road and Indian River Road
As a condition of approval, the commission required that "prior to the issuance of a Certificate of Zoning Compliance, the Applicant shall resignalize the light at the intersection of Prindle Hill Road and Indian River Road in accordance with the requirements of the Town Engineer and Police Chief."
This was recommended to assist with traffic flow that would be related to this project as well as the existing traffic through the area. The plaintiff's major objection seems to be some concern with cost; no cost figures were placed before the court to examine in context for reasonableness by the plaintiff. The plaintiff, at a minimum, agrees that timing of the light should be addressed. There is nothing the plaintiff has demonstrated to be either unreasonable or unnecessary about this requirement.
Wilfulness
While not all of the conditions challenged violate this court's CT Page 15070 orders, many of them do as found above. Therefore, the court must consider whether the defendant's conduct in violating the court's order was wilful in nature.
The need for compliance with court orders is without question essential to the integrity of the judiciary's role as the arbiter of disputes between litigants. However, in reviewing that violation in the context of a civil contempt proceeding, our Supreme Court has integrated the necessity of a wilfulness component. "The interests of orderly government demand that respect and compliance be given to orders issued by courts possessed of jurisdiction of persons and subject matter. One who defies public authority and willfully refuses his obedience, does so at his peril. United States v. United Mine Workers, 330 U.S. 258, 303,67 S.Ct. 677, 91 L.Ed. 884 (1947). "Cologne, op cit. At 147.
A pivotal issue before this court is whether conduct which is otherwise in violation of a court order must be willful in order to be contemptuous conduct. The United States Supreme Court has ruled that the presence of wilfulness is not always necessary: "[t]he absence of wilfulness does not relieve from civil contempt . . . . Since the purpose is remedial, it matters not with what intent the defendant did the prohibited act."McComb v. Jacksonville Paper Co., 336 U.S. 187, 191, 69 S.Ct. 497,93 L.Ed. 599 (1949).
The courts of Connecticut, however, have continued to require a finding of wilfulness before a finding of contempt can be made. Connolly v.Connolly, 191 Conn. 468, 483 (1983): Ford v. Ford 52 Conn. App. 522, 529
(1999). This court must determine if the conduct of the commission was willful. The transcripts of the proceedings demonstrate repeated inquiries by members of the commission as to whether conditions being contemplated by them would be in compliance with the court decision. In the transcript, it is clear that while the commissioners were not pleased with the court decision, they did not have an intent to violate or frustrate it. At the hearing on the motion for contempt, many of the commissioners testified. They uniformly were respectful of the court authority to order the approval of this affordable housing development, and, were relying on the opinions of their attorney and their town experts as to the reasonableness of, or necessity, for the changes required in the conditions attached to the approval. There was one commissioner who believed that the offending conditions were `wish list' items not in compliance with the court decision. However, that his view differed from theirs, does not make their conduct wilfully in violation of the court orders.
While the court does not find the conduct of the commission wilfully in violation of the court orders, it remains that there are conditions CT Page 15071 attached to the commission approval which the court finds fails to meet the standard of "reasonable and necessary' as prescribed in the original decision, or otherwise in compliance with the limitations of the authority to attach conditions under traditional zoning law.
"In a contempt proceeding, even in the absence of a finding of contempt, a trial court has broad discretion to make whole any party who has suffered as a result of another party's failure to comply with a court order." Nelson v. Nelson, 13 Conn. App. 355, 367, 536 A.2d 985
(1988). The court, in this instance, must exercise "the inherent power of the court to coerce compliance with its court orders." Papa v. New HavenFederation of Teachers, 186 Conn. 725, 737 (1982).
The court denies the motion for contempt; however, the court orders the defendant Town of Orange Planning and Zoning Commission, within 60 days, to modify its Special Permit Approval of March 7, 2000 to modify condition 5, to provide that such an easement be for snow shelf purposes, and, delete conditions 2b, 2c, 8, 9, and 10 in their entirety from the Special Permit Approval.
The court declines to address the plaintiff's motion for supplemental judgment, as moot, in light of these orders.
It is so ordered.
Munro